STATE OF NORTH CAROLINA v. JAMES P. VERT

No. 784SC611

(Filed 5 December 1978)

1. **Kidnapping § 1.2— kidnapping and armed robbery—restraint and asportation separate from robbery—separate, punishable offenses**

    In a prosecution for armed robbery and kidnapping, defendant's contention that there was insufficient evidence to support the kidnapping conviction because the evidence failed to show a restraint in violation of G.S. 14-39(a), separate and apart from the restraint inherent in the commission of the armed robbery, is without merit since the restraint and asportation of the victim consisted of moving her from the convenience store to a hallway in the rear of the building and tying her to a grocery cart; such restraint and asportation were not necessary to and not part of the armed robbery; and the elements of the kidnapping and the robbery were not the same and the two were thus separate and distinct offenses.

2. **Criminal Law § 138; Robbery § 6.1— armed robbery—severity of sentence—determination by General Assembly**

    Defendant's contention that G.S. 14-87(c), providing that a person convicted of a violation of G.S. 14-87(a) must serve the first seven years of his sentence without benefit of parole, probation, suspended sentence, or any other judicial or administrative procedure except for time allowed for good behavior is unconstitutional because it usurps the inherent power of the courts to suspend a sentence and the constitutional power of the executive branch to grant reprieves, commutations and pardons is without merit, since the General Assembly has exclusive power to determine the penalogical system of the State and to prescribe the punishment for crimes.

APPEAL by defendant from *Small, Judge.* Judgment entered 15 March 1978, in Superior Court, ONSLOW County. Heard in the Court of Appeals 24 October 1978.

The defendant was convicted as charged of armed robbery and kidnapping. He was also charged with assault with a deadly weapon with intent to kill inflicting serious injury but was found guilty of assault with a deadly weapon inflicting serious injury. Defendant appeals from judgments imposing a prison term of 40 years on the charge of armed robbery, and concurrent terms of 10 years on the charge of assault with a deadly weapon inflicting serious injury and 25 years on the charge of kidnapping.

The evidence for the State tends to show that about 12:30 a.m. on 11 November 1977, Betsy Norton, clerk, was alone in the Stop-N-Go Store, when a man appeared at the counter, pointed a gun at her, and ordered her to open the cash register. She set off an alarm in the Sheriff's office. There were several bills, ones, fives, and tens in the cash register but less than $75.00. Defendant ordered her to take a "Closed" sign and hang it on the front door. Defendant ordered her to go to the hall at the back of the store. There defendant shot her in the hip, forced her to tell him how to open the safe, left her to move around in the store for two minutes, returned and tied her hand to a shopping cart, then left the store.

A sheriff's deputy arrived in time to see a person fitting defendant's description running from the store and ordered him to halt. Defendant was apprehended about an hour later in a vehicle about 0.4 miles from the store. A search of the area revealed items of clothing similar to the items worn by the defendant.

Betsy Norton identified the defendant as the perpetrator. She was hospitalized for seven weeks. The bullet is still in her hip.

Defendant offered no evidence.

*Attorney General Edmisten by Associate Attorney Christopher P. Brewer for the State.*

*Tharrington, Smith & Hargrove by Roger W. Smith for defendant appellant.*

CLARK, Judge.

[1] First, the defendant contends that there was insufficient evidence to support the kidnapping conviction because the evidence failed to show a restraint, in violation of G.S. 14-39(a), separate and apart from the restraint that is inherent in the commission of armed robbery, as required by the decision in *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978).

G.S. 14-39(a) provides in pertinent part that confinement, restraint or removal of the victim for the purpose of "(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony" constitutes the crime of kidnapping.

We find no need to quote at length from the thorough and learned opinion of Justice Lake in *Fulcher*. In treating the double jeopardy question, Justice Lake wrote:

". . . We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word 'restrain,' as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony." 294 N.C. at 523, 243 S.E. 2d at 351.

In *Fulcher*, the Supreme Court of North Carolina rejected the decision of this Court (34 N.C. App. 233, 237 S.E. 2d 909) to the effect that, to meet Due Process and Equal Protection standards, kidnapping is not committed unless the defendant confined or restrained the alleged victim for a substantial period of time or moved the victim a substantial distance. Justice Lake wrote: "Thus, it was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed." 294 N.C. at 522, 243 S.E. 2d at 351.

In applying the principles of law in *Fulcher* to the evidence in the case *sub judice*, though we do not have to resort to a stop

watch or tape measure, we do have the task of determining whether the restraint or removal of Betsy Norton by the defendant was separate and apart from that which was inherent in the commission of the armed robbery. If the kidnapping was an inherent, inevitable feature of the armed robbery, then the conviction and punishment of the defendant for both crimes would violate the constitutional prohibition against double jeopardy.

In *Fulcher*, the defendant forced his way into a motel room and bound the hands of two women, and by the threatened use of a deadly weapon forced each to commit a crime against nature. It was held that the kidnapping was complete and separate and apart from the crime against nature offenses subsequently committed, and that defendant's conviction and punishment for both kidnapping and crime against nature did not constitute double jeopardy.

Subsequent to *Fulcher*, the Court again considered the double jeopardy question. In *State v. Banks*, 295 N.C. 399, 245 S.E. 2d 743 (1978), the defendant was charged with (1) armed robbery, (2) assault with intent to commit rape, (3) crime against nature, and (4) kidnapping. The victim was reading in the restroom of a bus station while waiting for relatives to meet her. The defendant with a knife forced her to go into the last stall of the restroom, to sit on the commode where he rubbed his private parts against hers and fondled her with his hands, and forced her to perform oral sex. Thereafter, he demanded and received two dollars from her. The jury returned verdicts of guilty as to each of the four charges. From judgments imposing concurrent sentences defendant appealed. The court rejected the argument that the other crimes charged were lesser offenses of kidnapping. Justice Branch for the Court wrote:

> ". . . The charges so alleged were not *elements* of the offense of kidnapping which the State had to prove as is the case of the underlying felony in the felony murder rule. When the State proves the elements of kidnapping and the purpose for which the victim was confined or restrained, conviction of the kidnapping may be sustained. Thus, the crimes of crime against nature, assault with intent to commit rape and robbery with a dangerous weapon are separate and distinct offenses and are punishable as such. . . ." 295 N.C. at 406, 245 S.E. 2d at 748.

In *Blockburger v. United States*, 284 U.S. 299, 76 L.Ed. 306, 52 S.Ct. 180 (1931), the court adopted the "same evidence" test for determining the presence of double jeopardy where a defendant has been charged with multiple crimes. This principle of law has led to the doctrine of the lesser included offense. The controlling factor is whether the alleged multiple crimes have different elements. If so, they are separate and distinct offenses even though one crime was committed during the perpetration of the other in a continuous course of criminal conduct. It appears that the Supreme Court of North Carolina adheres to this "same evidence" test. *State v. Banks, supra; State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). And see *State v. Richardson*, 279 N.C. 621, 635, 185 S.E. 2d 102, 111 (1971), (Higgins, J., concurring in part, dissenting in part) where Justice Higgins dissents from the majority decision which upheld the felonious assault conviction and advocates the "same transaction" test. *See* Note, Waiver of Double Jeopardy Right: The Impact of *Jeffers v. United States*, 14 Wake Forest L. Rev. 842 (1978).

The crime of kidnapping in *Banks, Fulcher, Richardson* and the case *sub judice* were committed during a continuous course of conduct which involved the commission of other offenses, but the other crimes had elements in addition to and not included within, the elements of the crime of kidnapping. Therefore, the multiple offenses are separate and distinct. In the case *sub judice* the restraint and asportation of the victim consisted of moving her from the store to a hallway in the rear of the building and tying her to a grocery cart. It was not necessary to and not a part of the armed robbery, and the elements of the two offenses are not the same. The defendant's argument is overruled.

[2] Defendant next attacks the constitutionality of G.S. 14-87(c) which provides:

"Any person who has been convicted of a violation of G.S. 14-87(a) shall serve the first seven years of his sentence without benefit of parole, probation, suspended sentence, or any other judicial or administrative procedure except such time as may be allowed as a result of good behavior, whereby the period of actual incarceration of the person sentenced is reduced to a period of less than seven years. Sentences imposed pursuant to this section shall run con-

secutively with and shall commence at the expiration of any other sentences being served by the person sentenced hereunder.

Notwithstanding any other provision of law, neither the Parole Commission nor any other agency having responsibility for release of inmates prior to expiration of sentences shall authorize the release of an inmate sentenced under this section prior to his having been incarcerated for seven years except such time as may be allowed as a result of good behavior."

The defendant contends that the power of the trial courts to suspend a sentence is an inherent power and the power to grant "reprieves, commutations, and pardons" is vested in the executive branch under N.C. Const., art. III, § 5(6), and that the usurpation of these powers by the legislative branch is unconstitutional.

The Supreme Court of North Carolina has long recognized the power of the state trial courts to stay execution of judgments upon conviction in a criminal prosecution and to suspend judgments on terms that are reasonable and just. *State v. Lewis*, 226 N.C. 249, 37 S.E. 2d 691 (1946); *State v. Henderson*, 207 N.C. 258, 176 S.E. 758 (1934); *State v. Edwards*, 192 N.C. 321, 135 S.E. 37 (1926).

In *State v. Lewis, supra*, the court stated that the power of the trial courts to suspend judgment was both inherent and statutory. The power to suspend sentences referred to in *Lewis* does not mean exclusive power that cannot be abridged by the Legislature. Rather, it is the authority possessed by and exercised by the courts in administering the punishment for crime prescribed by the Legislature. *See* Mallard, Inherent Power of the Courts of North Carolina, 10 Wake Forest L. Rev. 1 (1974).

It is noted that G.S. 15A-1331(a) provides:

"The criminal judgment entered against a person in either district or superior court may, unless the offense for which his guilt has been established is a capital offense, or unless a statute otherwise specifically provides, include a sentence in accordance with the provision of this Article to one or a combination of the following alternatives:

(1) Probation as authorized by Article 82, Probation, or a term of imprisonment as authorized by Article 83, Imprisonment; or

(2) A fine as authorized by Article 84, Fines; or

(3) Other punishment authorized or required by law."

It is established that the Legislature has exclusive power to determine the penalogical system of the State and to prescribe the punishment for crime. *Jernigan v. State*, 279 N.C. 556, 184 S.E. 2d 259 (1971); *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 28 A. 2d 897 (1942), 143 A.L.R. 1473 (1943).

In *Jernigan*, the court upheld the constitutionality of that part of G.S. 148-62 which empowered the Board of Paroles to direct that a returned prisoner shall serve the remainder of any sentence upon which his parole was revoked after the completion of the sentence for a new crime. The Court pointed out that the Legislature may establish a parole system and may assign the granting of parole and supervision of parolee to the Board of Paroles, and that it may give to the Board the option of prescribing the order in which sentences may be served upon revocation of parole.

The contentions of the defendant attacking the constitutionality of G.S. 14-87(c) cannot be sustained.

We have carefully examined and considered defendant's other assignments of error in light of the rule that a new trial will be granted only if the error is prejudicial. G.S. 15A-1443(a) provides that "[a] defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." We find no prejudicial error.

No error.

Judges WEBB and MARTIN (Harry C.) concur.