Eric William NELL, Appellant,

v.

STATE of Alaska, Appellee.

No. 5565.

Court of Appeals of Alaska.

April 1, 1982.

Allan Beiswenger, Asst. Public Defender, Kenai, Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Elizabeth H. Sheley, Asst. Atty. Gen., Anchorage, Barry Jeffrey Stern, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Eric William Nell was indicted on charges of robbery in the first degree, AS 11.41.-500(a)(1), and of theft in the second degree, AS 11.46.130(a)(1). Nell was tried before a jury and was found guilty of robbery, but not guilty of theft. Superior Court Judge Karl Johnstone sentenced Nell to a six-year term of imprisonment with one year suspended. Nell has appealed to this court alleging various errors.

On April 3, 1980, Eric William Nell, age 20, was living with his brother Keith and his sister-in-law Anna in their Anchorage apartment. A few days prior to April 3, Nell was given an ultimatum by his brother. Nell was told to move out in one week; if Nell could find a job, however, he would be permitted to stay until he could save enough money to move into a place of his own. As of April 3, Nell had not found a job.

On the morning of April 3, Keith and Anna went to work, leaving a key to the apartment with Nell. Later that day, the

wife of the apartment building's assistant manager noticed that the Nell's mailbox was open and that there was mail scattered about the sidewalk. When the assistant manager went to the Nell's apartment to notify them, he found the door to the apartment open and the key in the lock. Both Keith and Anna Nell were contacted at work and they returned home to the apartment. The apartment had been ransacked and a number of items, including a pistol, were found to be missing. Anna Nell then went out to check the storage sheds outside of the apartment building.[1] After checking half a dozen sheds, she finally found some of the missing items. About 6:00 that evening, Nell called the apartment, and Keith told him to come home as the apartment had been robbed.

Apparently, Nell did return to the apartment complex, but seeing police cars, he decided not to go to the apartment itself. Instead, he checked the storage shed and found that the goods which he had placed there were gone. He then took a taxi back into town. At first he intended to rob this taxi driver, but he decided that the cab driver was "a nice guy" and changed his mind.

At approximately 8:50 p. m., Nell got in a taxi driven by Margaret Kelley. She drove him to his designated location and when she asked for the fare, Nell, who was sitting in the back seat, placed a gun to the back of her head, pulled the hammer back, and said, "Have you ever had a gun to your head before?" Kelley answered, "Yes," and Nell directed her to get out of the taxi. Nell then drove off in the taxi.

Kelley reported the incident to her dispatcher and the police were notified. Shortly after hearing the report of the incident over his radio, Officer Edwin Apperson spotted Nell driving the taxi. As Nell drove past Apperson, Nell held up his middle finger towards the officer. A high speed chase ensued, and Apperson was finally able to force Nell off of the road.

Nell was transported to the police station where he made a statement to the police. In essence, Nell related the above facts. Nell also stated that prior to talking to his brother on the phone, he drank three quarts of beer and half a pint of vodka.

Nell was indicted on one count of robbery in the first degree for his theft of the taxi, AS 11.41.500(a)(1), and on one count of theft in the second degree for his theft of the goods from his brother's apartment, AS 11.46.130(a)(1). He was tried by a jury before Judge Johnstone in the Superior Court of the State of Alaska, Third Judicial District, Anchorage, and he was found guilty on the robbery charge and not guilty on the theft charge. Nell was subject to a presumptive sentence of six years under AS 12.55.125(c)(1), but based upon a finding of a factor in mitigation of the offense, Judge Johnstone suspended one year of the presumptive six-year term.

■ As his first point on appeal, Nell argues that the trial judge erred in refusing to sever the robbery and the theft charges for trial. We disagree.

As a general rule, under the Alaska Rules of Criminal Procedure, joinder analysis encompasses two distinct inquiries. First, under Rule 8(a), it must be asked whether the two offenses charged are so related as to make joinder proper. Second, under Rule 14, it must be determined whether, given the propriety of joinder under Rule 8(a), joinder of the offenses for trial would unduly prejudice the defendant.

Thus, as a threshold issue, we must consider Alaska Criminal Rule 8(a) which states:

> *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies, misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

---

1. Anna thought that if Eric was the thief, he might have left the goods in one of the storage sheds because he had left some things in one of the sheds in the past, and because he had no car with which to remove them from the scene.

Applying this rule to the instant case, it is clear that the alleged theft and robbery were closely connected and that they constituted parts of a common scheme or plan.[2] Thus, it was entirely appropriate to charge both offenses in the same indictment.

Having determined that it was permissible to join the offenses in a single indictment under Rule 8(a), it must be determined whether it was proper under Rule 14 to join the offenses for trial. In pertinent part, Rule 14 states:

*Relief From Prejudicial Joinder.* If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

■ It is Nell's contention that he was prejudiced by the joinder for trial because even though he wished to take the witness stand to testify on the robbery charge, he had to forego testifying altogether because he did not want to testify on the theft charge. In *Cleveland v. State*, 538 P.2d 1006 (Alaska 1975), the Alaska Supreme Court confronted this very issue and established a two-pronged test for determining prejudice. There, the court quoted from *Baker v. United States*, 401 F.2d 958, 976–77 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970) (footnotes omitted), where it was held,

[N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making·such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.

*Cleveland v. State*, 538 P.2d at 1008. The supreme court then quoted from another federal case, *United States ex rel. Tarallo v. LaVallee*, 433 F.2d 4, 6 (2d Cir. 1970), *cert. denied*, 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971). There, the court had rejected the defendant's claim of prejudice declaring, "[A]ll he presented was the fact that he had to make an 'election,' not that he was confronted with a dilemma fraught with prejudice." *Cleveland v. State*, 538 P.2d at 1008–09. Similarly, in a later case, *Huff v. State*, 598 P.2d 928, 933 (Alaska 1979), the supreme court rejected the defendant's contention that "[A]ny situation in which a defendant desires to testify with regard to one count, but not to another, is so prejudicial that severance should be granted."

In its brief, the state concedes that Nell satisfied the first prong of the *Cleveland* test, namely, that he had important testimony to give in regard to the robbery

---

**2.** The state argued below:

First, the revolver stolen from Keith Nell's apartment was the one used in the robbery of the taxicab. Clearly, evidence relating to the revolver being found in the taxicab would be admissible in a trial solely on the theft in the apartment count. Second, the arrest of the defendant, following the high speed chase, and the observation and seizure by police of the revolver in the taxicab subsequent to his arrest, is important evidence both for the charges of theft and the robbery. Moreover, the defendant's statements to the police immediately after his arrest that he knew they were after him for the burglary and wanted to have some fun are also admissible against him in relationship to the theft charge, as well as the robbery charge. Third, the defendant's belief following his telephone conversation with his brother that both the police and his brother knew that he had committed the theft provided a specific motive for him to obtain the taxicab as a means of escape. Fourth, the fact that the defendant, while driving the stolen taxicab, knew that the police were chasing him and clearly was attempting to escape is admissible evidence (relating to knowledge of guilt) as to both of the charges. Fifth, both alleged offenses occurred within hours of each other on the same date and both resulted from the same specific motive—the defendant's desperation, after being thrown out of his brother's apartment and jobless, to obtain money.

charge.[3] However, the state also observed, and correctly so, that Nell had failed to establish a strong need to refrain from testifying on the theft charge. Rather, Nell relied only upon a generalized fifth amendment argument. As the above cases indicate, however, such is not sufficient to support a Rule 14 severance motion. Nell's argument that he wished to testify about his alcohol consumption to show diminished capacity to form the required mental state to commit robbery assumes that he could not testify to his diminished capacity on the robbery charge without having to testify on the theft charge. Nell's assumption does not seem to be warranted. Evidence Rule 611(b) reads as follows:

*Scope of Cross-Examination.* Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Given this rule, it is clear that Nell had a strong argument that he could testify on the robbery charge without being cross-examined on the theft charge. Nell's generalized fifth amendment claim, therefore, did not establish that prejudice would occur if Nell testified to his diminished capacity on the robbery charge. We believe that the law requires a more explicit showing of prejudice than Nell made here before a severance is warranted. Accordingly, we find no error in denying the severance.

■ Nell next argues that the trial judge erred in giving the robbery instruction which he gave to the jury. Specifically,

Nell argues that the trial judge did not instruct the jurors that one of the elements which they must find in order to convict Nell of robbery was that he intended to permanently deprive the victim of the robbery of property. Nell also argues that if this court finds that the legislature did define the crime of robbery as not requiring an intent to permanently deprive another of property, then the robbery statute would violate the due process clause of the Alaska Constitution.[4]

We disagree with Nell that the crime of robbery, as defined in the criminal code, requires the state to prove as an element of the offense that the defendant intended to permanently deprive another of property. The statute defining robbery, AS 11.41.510, reads in pertinent part as follows:

*Robbery in the Second Degree.* (a) A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of a person, he uses or threatens the immediate use of force upon any person with intent to

(1) prevent or overcome resistance to his taking the property or his retention of the property after taking; or

(2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property.[5]

The plain language of the statute itself does not indicate that an intent to permanently deprive the victim of the property is an essential element of the offense. In fact, we note that the statute does not even require that property actually be taken

---

3. The state declared,

> By affidavit of counsel and argument to the court, Nell showed that he wanted to give evidence on a diminished capacity defense to the armed robbery. He wanted to testify that he had been intoxicated at the time of the armed robbery, thus affecting his capacity to form the intent required for conviction.

4. Art. 1, § 7 of the Alaska Constitution guarantees that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

5. Nell was convicted of robbery in the first degree which requires proof of an aggravating factor, in addition to proof that the defendant committed robbery. Nell was convicted under AS 11.41.500(a)(1) which provides:

> *Robbery in the First Degree.* (a) A person commits the crime of robbery in the first degree if he violates § 510 of this chapter and, in the course of violating that section or in immediate flight thereafter, he or another participant
>
> (1) is armed with a deadly weapon or represents by words or other conduct that he or another participant is so armed . . . . .

from the victim. From the face of the statute it is clear that the legislature, in passing this robbery statute, intended to emphasize the fact that robbery is a crime against the person and deemphasize the theft aspects of the offense.[6] We see no reason to add to the statute an intent to permanently deprive another of the property. The instruction which the trial court gave basically sets forth the offense as it is described in the statute. We have reviewed the instruction and find no error.[7]

■ We also reject Nell's argument that the robbery statute is unconstitutional without an intent to permanently deprive the victim of the property. Nell cites several Alaska cases which have declared that due process requires proof of criminal intent before a person can be convicted of certain serious crimes.[8] However, unlike

---

6. Robbery is placed in the criminal code with other offenses against the person, rather than placed with other property offenses.

7. The instruction which the trial judge gave is based upon the Alaska Pattern Jury Instructions (Criminal) § 41.500, produced by the Committee on Pattern Jury Instructions (Criminal) 1980. The instruction read:

A person commits the crime of Robbery in the First Degree if, in the course of taking or attempting to take property from the immediate presence and control of a person, he uses or threatens the immediate use of force upon any person with the intent to prevent or overcome resistance to his taking the property or his retention of the property after taking, and in the course of the taking or attempted taking is armed with a deadly weapon or represents by words or other conduct that he or another participant is so armed.

In order to establish the crime of Robbery in the First Degree, it is necessary for the state to prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Anchorage and on or about April 3, 1980.

Second, that Eric Nell took or attempted to take property from the immediate presence and control of a person.

Third, that the defendant used or threatened the immediate use of force upon any person.

Fourth, that the defendant intended to prevent or overcome resistance to his taking the property or his retention of the property after taking.

Fifth, in the course of the taking or attempted taking, the defendant was armed with a deadly weapon or represented by words or other conduct that he or another participant was so armed.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty.

8. Nell cites *Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978); *State v. Guest*, 583 P.2d 836 (Alaska 1978); *State v. Campbell*, 536 P.2d 105 (Alaska 1975); *Alex v. State*, 484 P.2d 677 (Alaska 1971); and *Speidel v. State*, 460 P.2d 77 (Alaska 1969). In *Speidel*, the court held that in order to obtain a conviction for failure to return a rental vehicle, the state must prove the defendant had criminal intent and that there was "the infliction of injury on the owner of the vehicle by intention, with awareness of some wrongdoing." *Speidel v. State*, 460 P.2d at 80. In *Alex*, the court held that to convict a person of the crime of escape, the jury must find that the defendant "acted intentionally and with awareness of his conduct." *Alex v. State*, 484 P.2d at 682. In *Campbell*, the court declared a statute unconstitutional which made retention of lost property a crime because that statute did not require any criminal intent on the part of the defendant for him to be convicted of the offense. In *Guest*, the court held that it was a defense to a statutory rape charge that the defendant made a reasonable mistake as to the age of the victim. In *Kimoktoak*, the court found an implied intent in a statute which made it a crime for the defendant to fail to render aid to a person he had injured in a motor vehicle accident. The court found the statute would be unconstitutional unless there was implied criminal intent. The court held that "criminal liability . . . attaches to a driver who leaves the scene of an accident where the state can prove, by direct or circumstantial evidence that the driver actually knew of the injury or that he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." *Kimoktoak v. State*, 584 P.2d at 32. *See also State v. Rice*, 626 P.2d 104 (Alaska 1981). In that case the court held that criminal intent must be implied into a regulation which made it illegal to possess or transport illegally taken game. The court held that to survive a due process attack, the government must prove that the defendant had the required level of intent. In order to secure a conviction under the regulation, the government must prove that the defendant knew or reasonably should have known that the game was illegally taken.

the statutes in those cases, AS 11.41.500 clearly requires proof of specific criminal intent. We, therefore, find that Nell's contention has no merit.

■ Nell also challenges another of the trial court's instructions to the jury. In essence, the challenged instruction ordered the jury to consider a lesser included offense only after it had acquitted Nell on the higher charge.[9] In support of this contention, Nell cites a series of Michigan cases and one Oregon case, which held that such an instruction unduly coerces the jury and improperly interferes with the jury's deliberations. *People v. West*, 408 Mich. 332, 291 N.W.2d 48 (1980); *People v. Mays*, 407 Mich. 619, 288 N.W.2d 207 (1980); *People v. Hurst*, 396 Mich. 1, 238 N.W.2d 6 (1976); *People v. Summers*, 73 Mich.App. 411, 251 N.W.2d 311 (1977); *State v. Ogden*, 35 Or. App. 91, 580 P.2d 1049 (1978).

We do not find that the instruction which the trial court gave is unduly coercive or that it improperly interferes with the jury's deliberations. We adopt the view of the great weight of authority which has upheld jury instructions similar to the one in issue here. *Pharr v. Israel*, 629 F.2d 1278 (7th Cir. 1980), *cert. denied*, 449 U.S. 1088, 101 S.Ct. 880, 66 L.Ed.2d 815 (1980); *Catches v. United States*, 582 F.2d 453 (8th Cir. 1978); *United States v. Tsanas*, 572 F.2d 340 (2d Cir. 1978), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978);[10] *Middlebrooks v. State*, 156 Ga.App. 319, 274 S.E.2d

643 (1980); *State v. Wilkins*, 34 N.C.App. 392, 238 S.E.2d 659 (1977); *State v. McNeal*, 95 Wis.2d 63, 288 N.W.2d 874 (1980); *Ballinger v. State*, 437 P.2d 305 (Wyo.1968). We, therefore, hold that the trial court committed no error in giving this instruction to the jury.

■ Nell next argues that the presumptive sentencing provisions of the criminal code are unconstitutional. Nell was sentenced under the provisions of AS 12.55.125(c)(1), which provides for a presumptive sentence of six years for a person who commits a Class A felony other than manslaughter, and used or possessed a firearm during the commission of the offense. The trial judge found that Nell had proven a mitigating factor under the provisions of AS 12.55.155(d)(9), in that "the conduct constituting the crime was among the least serious conduct included in the definition of the offense." The trial judge found that Nell's conduct was among the least serious conduct because that the firearm which Nell used was unloaded. Because of the presence of the mitigating factor, the trial judge could have reduced the sentence "by an amount as great as 50 percent of the presumptive term for factors in mitigation" under AS 12.55.155(a)(2). The sentencing range was thus from three to six years for Nell unless the trial judge found extraordinary circumstances were present, under AS 12.55.165, and referred the case to a three

---

**9.** The instruction reads in full:

If you find that the state has failed to prove any one of the essential elements of the crime of robbery in the first degree, under Count I of the Indictment, you must find the defendant not guilty of robbery in the first degree, and you will then proceed with your deliberations and decide whether the state has proved beyond a reasonable doubt all the essential elements of the lesser crimes of robbery in the second degree or assault in the second degree.

If you find that the state has failed to prove any one of the essential elements of the crime of robbery in the second degree, you must find the defendant not guilty of robbery in the second degree. If you find that the state has failed to prove any one of the essential elements of the crime of assault in the second degree, you must find the defendant not guilty of assault in the second degree.

If you find that the defendant is not guilty of robbery in the first degree, robbery in the second degree, or assault in the second degree, at that point you should consider whether the state has proved the essential elements of the crime of mischief in the third degree. If the state has failed to prove any of the essential elements of the crime of mischief in the third degree, you should find him not guilty of any crime under Count I of the Indictment.

When considering Count II of the Indictment, you should return a verdict of not guilty, or guilty for the crime of theft in the second degree.

**10.** Both *Tsanas* and *Catches* have approved the instruction in the context of an election rule whereby the defendant has the choice of opting for an instruction like the one before us or for an instruction like that favored by Nell.

judge sentencing panel.[11] Under AS 12.55.-125(c), if a defendant is sentenced to a presumptive term of imprisonment, that term of imprisonment may not be suspended, imposition of sentence may not be suspended, nor can the term of imprisonment be otherwise reduced. The trial judge sentenced Nell to six years but suspended one year because of the mitigating factor.

Nell argues that the presumptive sentencing provisions violate the separation of powers doctrine. Specifically, Nell refers to article IV, section 1 of the Alaska Constitution which provides:

> The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. The jurisdiction of courts shall be prescribed by law. The courts shall constitute a unified judicial system for operation and administration. Judicial districts shall be established by law.

Nell contends that the presumptive sentencing scheme violates the separation of powers doctrine, since it constitutes a legislative infringement on the power of the judiciary to sentence an offender on the basis of the particular facts of the case and the nature of the particular offender. We reject Nell's contention that the presumptive sentencing provisions are an unconstitutional violation of the separation of powers doctrine. We note that the presumptive sentencing scheme does not foreclose the possibility of placing a person on probation. The presumptive sentencing statutes certainly limit the discretion of a judge in imposing a sentence, but they do not foreclose sentences of less than the presumptive sentence. In the event the trial judge finds that a presumptive sentence would result in manifest injustice, he can refer the sentencing to a three judge panel which has the

authority to impose a lesser sentence or probation. AS 12.55.175.

Alaska does recognize a separation of powers doctrine. *Public Defender Agency v. Superior Court, Third Judicial Dist.*, 534 P.2d 947, 950 (Alaska 1975). However, the supreme court has recognized the authority of the legislature in the sentencing area, stating that, "[t]he power to suspend sentences is not inherent in the judicial branch of government; the power exists only when conferred upon the judiciary by the legislature." *Pete v. State*, 379 P.2d 625, 626 (Alaska 1963). Several other Alaska cases have explicitly recognized the authority of the legislature in the area of fixing criminal sentences. *Bell v. State*, 598 P.2d 908, 913 (Alaska 1979); *Rust v. State*, 582 P.2d 134, 137 (Alaska 1978); *Thessen v. State*, 508 P.2d 1192, 1197 (Alaska 1973). *See also State v. Williams*, 115 Ariz. 288, 564 P.2d 1255, 1256 (Ariz.App.1977); *State v. Freeman*, 223 Kan. 362, 574 P.2d 950, 957 (1978); *State v. Vert*, 39 N.C.App. 26, 249 S.E.2d 476, 479 (1978). We conclude Nell's argument has no merit.[12]

Nell next raises a related argument that the presumptive sentencing statutes violate article I, section 12 of the Alaska Constitution which provides in part: "Penal administration shall be based on the principle of reformation and upon the need for protection of the public." Nell argues that in light of the Alaska Supreme Court's interpretation of article 1, section 12 in *State v. Chaney*, 477 P.2d 441 (Alaska 1970), the emphasis on punishment in the presumptive sentencing statutes is unconstitutional. In *Chaney* the court stated:

> Under Alaska's Constitution, the principles of reformation and necessity of protecting the public constitute the touchstones of penal administration. Multiple

---

11. The sentencing panel may impose a wide range of sentences, including reducing a sentence to a sentence of probation, if it finds that imposition of the presumptive term or the failure to consider aggravating or mitigating factors which are not listed in AS 12.55.155 would result in manifest injustice. AS 12.55.175.

12. Nell relies primarily on the concurring and dissenting opinion of Chief Justice Bird in *People v. Tanner (Tanner I)*, 151 Cal.Rptr. 299, 311,

587 P.2d 1112, 1124 (Cal.1978). In that opinion, Justice Bird argued that a law which restricted the ability of a sentencing judge to impose a sentence of probation in certain crimes where a firearm was used was unconstitutional because it violated the separation of powers doctrine. However, the majority of the Supreme Court of California rejected this view. *People v. Tanner (Tanner II)* 24 Cal.3d 514, 156. Cal.Rptr. 450, 452 n.3, 596 P.2d 328, 330 n.3 (Cal.1979).

goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

*Id.* at 444 (footnotes omitted). Nell's argument is that by emphasizing punishment, the presumptive sentencing statutes prevent the trial court from carrying out the other goals of sentencing which emphasize reformation of the offender and rehabilitation. Therefore, Nell contends that under *Chaney* the statutes are unconstitutional.

There appears to be some support for Nell's position that the provisions of article 1, section 12 can impose limitations on the authority of the legislature to set punishment for crimes. In *Thessen v. State*, 508 P.2d at 1197, the court said: "Within constitutional limits, the Legislature has the power to impose whatever punishments it deems appropriate for specific crimes." (Footnote omitted.) A footnote after the phrase "constitutional limits" refers to article 1, section 12.[13] Therefore, the court in *Thessen*, while recognizing the authority of the legislature to regulate criminal sentences, also recognized a limitation in the legislature's powers under article 1, section

12. However, we do not see the presumptive sentencing provisions as being in conflict with article 1, section 12. The *Chaney* criteria have essentially been incorporated into the criminal code as AS 12.55.005. That statute provides in part:

In imposing sentence, the court shall consider

(1) the seriousness of the defendant's present offense in relation to other offenses;

(2) the prior criminal history of the defendant and the likelihood of his rehabilitation;

(3) the need to confine the defendant to prevent further harm to the public;

(4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;

(5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct; and

(6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms.

The legislature emphasized that the purpose of the presumptive sentencing provisions was for "elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences...." AS 12.55.005. The course chosen by the legislature was to provide for presumptive sentences for repeat felons and for people, like Nell, who were convicted of certain crimes designated by the legislature.[14] The commentary to the criminal code provides that in sentencing repeat offenders, and presumably other offenders such as Nell who fall within the presumptive sentencing

---

**13.** The footnote reads as follows:

In addition to the double jeopardy provision, the Constitution of the State of Alaska provides in article 1, section 12:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

See *Faulkner v. State*, 445 P.2d 815 (Alaska 1968), where Justice Dimond, in an opinion not

joined by the other two members of the court, held that a sentence violated the cruel and unusual punishment clause of article 1, section 12.

**14.** In addition to the provision under which Nell was sentenced, AS 12.55.125(c)(1), AS 12.-55.125(a) and (b) provide for presumptive terms for murder in the first and second degree, whether or not these are first offenses.

provisions, "the seriousness of the defendant's present offense in relation to other offenses" will be the primary factor which will be emphasized by the presumptive sentencing provisions. *See* Commentary to AS 12.55.005. We note that the legislature did not eliminate judicial discretion to give less than the presumptive sentence. The presumptive sentence can be lowered by mitigating circumstances and, in the event the trial judge refers the case to a three judge panel, the panel has broad sentencing discretion under AS 12.55.175 if it finds that a presumptive sentence would result in "manifest injustice." Although the presumptive sentencing provisions certainly restrict judicial discretion in the sentencing area, they do not eliminate it. We believe that the legislature has the authority to reasonably restrict judicial discretion in order to accomplish the goal of eliminating unjustified sentencing disparity. We therefore find that the presumptive sentencing provisions under which Nell was sentenced do not conflict with article 1, section 12 of the Alaska Constitution.

■ In his reply brief, Nell argues for the first time in this appeal that the presumptive sentencing provisions violate his right to equal protection of the laws.[15] However, failure to raise this argument at an earlier point in the appeal constitutes a waiver of that argument. Appellate Rule 212(c)(3) states, in pertinent part:

> *Reply Brief.* The appellant may file a brief in reply to the brief of the appellee. This brief may raise no contentions not previously raised in either the appellant's or appellee's briefs.

In accordance with this rule, we hold that Nell's failure to timely raise the equal protection argument constitutes a waiver of that argument and we will not consider it. *See Kristich v. State,* 550 P.2d 796, 804 (Alaska 1976); *Lewis v. State,* 469 P.2d 689, 691 n.2 (Alaska 1970).

---

**15.** U.S.Const. amend. XIV, § 1; Alaska Const. art. 1, § 1.

**16.** It should be noted that under the provisions of the presumptive sentencing statutes, Judge Johnstone was required to order the incarcera-

■ Nell next argues that the trial judge erred in ruling that he had no authority to place Nell in the Teen Challenge Program as an alternative to incarceration. Instead, Judge Johnstone sentenced Nell to a six-year term of imprisonment with one year suspended. Special conditions of probation required Nell to abstain from consuming alcoholic beverages and to be placed in the Teen Challenge Program or Akeela House at the discretion of his probation officer. Nell argues that AS 12.55.125(h), the last paragraph of the statute which provides for certain presumptive terms of imprisonment provides, "[n]othing in this section . . . limits the discretion of the sentencing judge except as specifically provided." Nell argues that the court has discretion under the authority of *Lock v. State,* 609 P.2d 539 (Alaska 1980), to place a person in a treatment program. In *Lock,* the court held that a person who spent time in a residential treatment center as a condition of probation should be given credit for time served in that facility toward a sentence of imprisonment which was imposed after a revocation of probation. Nell argues that it makes no sense to require a judge to give credit for time served in such a facility, but not let the judge send the person to such a facility directly. Nell essentially argues that the court's decision in *Lock* shows that placement in a treatment facility is the equivalent of incarceration. However, even if that is true, it does not follow that the trial judge has authority to sentence a person to a particular treatment program instead of committing him to the care of the Commissioner of Health and Social Services. It is clear that under controlling law, Judge Johnstone had no authority to directly order Nell's placement in a particular treatment program.[16] Under AS 33.30.090, the trial court is empowered only to commit a person convicted of an offense to the Commissioner of Health and Social Serv-

tion of Nell; he had no authority to place Nell on probation and to thus provide for his placement in a treatment program as a condition of such. AS 12.55.125(g).

ices, and under AS 33.30.100, it is only the commissioner who is empowered to designate the facility where the sentence shall be served. *LaBarbera v. State*, 598 P.2d 947, 949 (Alaska 1979); *Rust v. State*, 582 P.2d 134, 138, *modified on reh'g*, 584 P.2d 38 (Alaska 1978). Accordingly, we find no error in Judge Johnstone's failure to place Nell in a treatment program as an alternative to incarceration.[17]

Lastly, Nell challenges his sentence as excessive. As a first time felon who used a firearm during the commission of the offense, Nell was subject to a presumptive sentence of six years under AS 12.55.-125(c)(1). Judge Johnstone, however, found one mitigating factor in Nell's favor, namely, that since the gun he used during the robbery was unloaded, Nell's conduct was the least serious conduct included in the definition of the offense. Accordingly, Judge Johnstone considered the mitigating factor in light of the *Chaney* criteria and suspended one year of the presumptive six-year term. It is Nell's contention that Judge Johnstone should have reduced the presumptive six-year sentence by more than one year. We disagree. As mandated by *Juneby v. State*, 641 P.2d 823, at 835 (Alaska App., 1982), the record indicates that Judge Johnstone predicated his adjustment of the presumptive term upon a due consideration of the *Chaney* criteria and the mitigating factor which he found. Our review of the record and Judge Johnstone's sentencing remarks [18] convinces us that the reduction of the presumptive term by a period of only one year was not clearly mistaken. *See Id.* at 835.

The judgment is AFFIRMED.

---

17. This holding is not intended to minimize the significance of the indirect means available to achieve a convicted offender's placement in an alternative treatment program. It is within the sentencing judge's authority to make a recommendation to the commissioner regarding the appropriate placement of the offender. Under AS 33.30.100, the commissioner has the power to effectuate such a recommendation by placing the offender in the appropriate facility. And although the commissioner is not bound by the sentencing court's recommendation, a demonstrated failure to provide an appropriate rehabilitation program or to further the purposes of the sentence may justify judicial intervention. Alaska R.Crim.P. 35(b); AS 12.55.-088; *LaBarbera v. State*, 598 P.2d at 949. *See also Fermoyle & Joe v. State*, 638 P.2d 1320 (Alaska App., 1982).

18. In pertinent part, Judge Johnstone remarked in sentencing,

In so finding one mitigating factor I conclude that there should be a decrement to the sentence. In determining the amount of the decrement to the sentence, I have to review the *Chaney* criteria and try to achieve the sentencing goals. I believe that a 6 year sentence would not provide any form of rehabilitation that I believe Mr. Nell needs. I do not believe Mr. Nell needs the presumptive 6 year sentence to isolate him from society to prevent further criminal conduct during his term of confinement. I believe that a lesser sentence than 6 years will serve as a deterrent to Mr. Nell after his release from confinement. I believe further that a lesser sentence, what I am about to give Mr. Nell, will deter other members of the community who might possess similar tendencies toward criminal conduct to that of the offender, Mr. Nell. I believe that—further that I can reaffirm societal's norms, put the values society expects to be placed in a sentence of this nature into the sentence by a lesser sentence. I'm going to sentence Mr. Nell to 6 years, I'm going to suspend one year.