Ellen M. HUGO, Appellant,

v.

CITY OF FAIRBANKS, Appellee.

No. 6811.

Court of Appeals of Alaska.

Feb. 4, 1983.

John Hagey, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

James M. Mullen, Asst. City Atty., and Herbert P. Kuss, City Atty., Fairbanks, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

Ellen M. Hugo was convicted of shoplifting, in violation of Fairbanks General Code

Ordinance (FGCO) § 6.303(a).[1] The trial court construed the ordinance as not requiring an intent to permanently deprive. Hugo appeals her conviction on the basis that the ordinance requires such an intent. We agree and reverse the conviction.

## FACTUAL BACKGROUND

Hugo is an elderly Eskimo woman from Anaktuvuk Pass. Sometime during the first two weeks of December, 1981, she flew to Fairbanks to be with her hospitalized husband. Hugo had visited Fairbanks occasionally and had often shopped in Fairbanks stores.

On December 18, 1981, Hugo went to a Fairbanks shopping mall to shop for Christmas presents. At about 7:30 p.m. she entered the mall's Pay 'N' Save store, where she was watched by store security agent Mary Clarke. Clarke testified that Hugo carried a purse, a small tote bag, and a paper sack. The paper sack contained a pair of shoes which Hugo apparently had already purchased elsewhere in the mall. Clarke saw Hugo place two pairs of suede gloves in the paper sack, then go to another aisle and place four pairs of boys' socks in the paper sack. Hugo then went to another aisle and removed a plastic shopping bag. She took it to the pharmacy checkout stand where she paid for it. Hugo then put the paper sack and its contents (shoes, gloves, and socks) in the plastic bag. She did not pay for the gloves and socks when she paid for the plastic shopping bag, although she could have done so. After purchasing the plastic bag, Hugo returned to the aisle where she had been before and removed two more pairs of gloves which she then placed in the tote bag.

Clarke testified that Hugo then left Pay 'N' Save by exiting through a closed checkout stand. Adjacent checkout stands were open. Hugo entered the mall and stopped by a refreshment stand nearby but outside the Pay 'N' Save entrance. Clarke apprehended Hugo in front of the stand. Hugo explained that she left the store to get a Coke at the refreshment stand. Clarke took Hugo to the store's security office where she gave Hugo a Coke and proceeded to document the incident in accordance with Pay 'N' Save's shoplifter apprehension procedures. Clarke first read Hugo her *Miranda* rights.[2] Hugo requested a translator because she did not understand English well. However, no translator was available. Clarke then had Hugo sign a statement that said that Hugo appropriated the socks and gloves for her own use without paying for them and without intending to pay for them. Hugo did not sign the "acknowledgement and waiver of rights" section of the statement.

## PROCEEDINGS BELOW

On March 31, 1982, Hugo was tried by the court on a charge of shoplifting, a violation of FGCO 6.303(a). At trial, Hugo testified that she knew she had the unpurchased socks and gloves when she left the store but that she was thirsty and wanted to buy a Coke and then resume shopping.

Defense witness Dr. Peter Marshall, a friend of the Hugo family since June 1980, and a physician who provided medical care for the residents of Anaktuvuk Pass, testified that he had visited Anaktuvuk Pass several times. He described the one store in Anaktuvuk Pass and the shopping methods he had observed there. He testified that the store has a table at the front with a cash register on it. Shoppers bring their purchases to the table, carrying them in whatever manner they can manage. Customers frequently carry items to the front, drop them off, and resume shopping.

Marshall also testified that Hugo may have been under his care for a cold during her visit to Fairbanks. He stated that he commonly prescribed Actifed for his pa-

1. FGCO 6.303(a) provides:
   A person commits the offense of shoplifting if he takes possession of any goods offered for sale by a wholesale or retail business establishment with the intent to deprive the seller of such goods without paying their purchase price.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tients with colds. Actifed can cause thirst. Hugo testified that she had taken Actifed on the day she was apprehended outside of Pay 'N' Save. Marshall further testified that Hugo does not have a good command of English. She understands only simple statements. Marshall stated that, in his opinion, she could not have understood the statement she signed during her interview with security agent Clarke.

The trial court made several findings of fact. The court disregarded the admission signed by Hugo during her interview with Clarke. The court concluded that Hugo had not known what she had signed. The court also determined that Hugo placed the gloves and socks into her bags in order to carry them in a manner like that commonly followed at the store in Anaktuvuk Pass, and not with the purpose of concealing them. The court noted that Hugo's paying for the plastic shopping bag demonstrated her honesty.

The other findings of the court apply to the court's interpretation of the Fairbanks shoplifting ordinance and Hugo's conviction under the ordinance. The court concluded that Hugo left the store knowing that the goods were in her possession and with the intent of leaving without paying for them. The court indicated that it could not determine, on the basis of the evidence presented at trial, whether Hugo intended to return to Pay 'N' Save and pay for the goods at some future time. The court further indicated that whether or not Hugo intended to return to pay for the items was immaterial. The court concluded that Hugo violated the Fairbanks shoplifting ordinance by leaving the store without intending to pay for the items before exiting the store. In short, the court ruled that any determination as to Hugo's intent to permanently deprive Pay 'N' Save of its merchandise was immaterial because conviction under the ordinance does not require such an intent. The court concluded that the statute required only an intent to leave the store with merchandise without paying for it, and found Hugo guilty of this offense.

## DISCUSSION

■ Hugo contends that the shoplifting ordinance under which she was convicted establishes an offense an element of which is an intent to permanently deprive a store of its merchandise.[3] Because the trial court did not find that she had such an intent, Hugo argues that this court cannot uphold her conviction. The city takes the position that the ordinance is particularly designed to help curb shoplifting, and does not require an "intent to permanently deprive" as one of its elements. Since such an intent is not required, and since the trial court concluded that Hugo intended to deprive Pay 'N' Save of merchandise within this meaning of the ordinance, the city urges this court to affirm Hugo's conviction.

**3.** The city contends that Hugo's argument that the trial court incorrectly interpreted and applied the ordinance is improperly before this court. The city takes the position that Hugo did not notify it or this court of her ordinance interpretation argument in her statement of points of appeal, and that since Hugo did not include this argument in her points of appeal, this court should not consider the claim pursuant to Alaska Rule of Appellate Procedure 210(e). The city also contends that this court should not consider Hugo's ordinance interpretation argument under the rule that plain error will be considered on appeal, because the trial court's interpretation of the rule did not constitute plain error under Alaska Rule of Criminal Procedure 47(b).

We do not reach the issue of whether Hugo's statement of points of appeal adequately stated her argument that the trial court misconstrued the Fairbanks shoplifting ordinance. Even if her statement of points on appeal did not comply with Appellate Rule 210(e), this erroneous interpretation of the shoplifting ordinance would constitute plain error.

Criminal Rule 47(b) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Alaska Supreme Court has stated that: "The meaning of Crim.R. 47(b) is that we may consider questions raised for the first time on appeal if necessary to effect substantial justice or to prevent the denial of fundamental rights." *Hammonds v. State,* 442 P.2d 39, 43 (Alaska 1968). Plain error has also been described as "error which is both obvious and substantial." *Dimmick v. State,* 449 P.2d 774, 776 (Alaska 1969). Plain errors will be considered even if not noted by an appellant in her points of appeal. *Burford v. State,* 515 P.2d 382, 383 (Alaska 1973).

This court has recently decided three cases concerning the extent to which a statute or ordinance dispenses with the common law larceny requirement of an intent to permanently deprive an owner of property. *Morris v. Municipality of Anchorage*, 652 P.2d 503 (Alaska App.1982); *Smith v. Municipality of Anchorage*, 652 P.2d 499 (Alaska App.1982); *Nell v. State*, 642 P.2d 1361 (Alaska App.1982). In *Nell*, the defendant was convicted of first-degree robbery, in violation of AS 11.41.510 and AS 11.41.-500(a)(1).[4] Nell argued that the trial court erred in giving jury instructions that did not require the jurors to find, as an element of the offense under the statute, an intent to permanently deprive the robbery victim of his property. AS 11.41.510 states in relevant part:

> *Robbery in the Second Degree.* (a) A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of a person, he uses or threatens the immediate use of force upon any person with intent to
>
> (1) prevent or overcome resistance to his taking the property or his retention of the property after taking; or
>
> (2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property.

In holding that the statute did not require an intent to permanently deprive, this court stated:

> The plain language of the statute itself does not indicate that an intent to permanently deprive the victim of the property is an essential element of the offense. In fact, we note that the statute does not even require that property actually be taken from the victim. From the face of the statute it is clear that the legislature, in passing this robbery statute, intended to emphasize the fact that robbery is a crime against the person and deempha-

size the theft aspects of the offense. We see no reason to add to the statute an intent to permanently deprive another of the property. The instruction which the trial court gave basically sets forth the offense as it is described in the statute. We have reviewed the instruction and find no error.

642 P.2d at 1365–66 (footnotes omitted). Thus, in determining whether an ordinance or statute requires an intent to permanently deprive, the "plain language" statutory consideration rule should be applied. *See* 2A C. Sands, *Statutes and Statutory Construction* § 46.04, at 54 (4th ed. 1973). We must also take the probable intent of the legislature into account.

Both *Morris* and *Smith* involved ordinances designed to combat shoplifting. Smith was convicted under an Anchorage ordinance prohibiting shoppers from concealing merchandise on their person while shopping. 652 P.2d at 500 & n. 1. *Morris* is more relevant to Hugo's case. Morris was convicted of shoplifting in violation of an Anchorage shoplifting ordinance that prohibited the "removal of merchandise." 652 P.2d at 504 & n. 1. In both of these cases, the defendants argued that their convictions could not stand because they could not be convicted absent an intent to "permanently deprive" a store of its merchandise. This court rejected those arguments.

The defendant in *Smith* made several arguments to support his position that the Anchorage ordinance prohibiting the concealment of merchandise required a specific intent to permanently deprive a store of property as an element of the offense. Smith argued that the Anchorage ordinance was derived from current and former Alaska statutes that also made it a crime to conceal merchandise. Those statutes required a specific intent to permanently deprive as an element. We rejected this argument, since it was clear that the ordi-

---

**4.** AS 11.41.510 defines generally the offense of robbery. AS 11.41.500(a)(1) defines first-degree robbery. It specifies the aggravating factors that must be found, in addition to the elements of AS 11.41.510, to sustain a conviction for first-degree robbery. Nell's argument, however, focused on AS 11.41.510.

nance was not derived from those statutes. 652 P.2d at 501.

■ Smith next argued that "because shoplifting is a common law, larceny-type offense, specific intent to permanently deprive must be required by implication." *Id.* Although Smith did not question the constitutionality of the ordinance, this court addressed that issue, since the " 'danger of unconstitutionality is a relevant concern in determining whether to construe intent into the regulation.' " *Id.* (quoting *Kimoktoak v. State,* 584 P.2d 25, 31 (Alaska 1978), and *State v. Rice,* 626 P.2d 104, 108 (Alaska 1981)). We rejected Smith's argument on the basis of the history of shoplifting regulation. Anti-shoplifting ordinances and regulations were enacted "in the 1950's and 1960's when it became apparent that traditional larceny statutes were inadequate to control shoplifting." *Id.* (citing Note, *Shoplifting—An Analysis of Legal Controls,* 32 Ind.L.J. 20 (1956); Comment, *Legislation— Survey and Analysis of Criminal and Tort Aspects of Shoplifting Statutes,* 58 Mich.L. Rev. 429, 432 (1960); Comment, *Shoplifting and the Law of Arrest: The Merchant's Dilemma,* 62 Yale L.J. 788 (1952)). We quoted a portion of the Michigan Law Review comment to show that shoplifting laws were designed to permit conviction for the offense without requiring the state to prove an intent to permanently deprive. *Id.* at 502. We further held that a shoplifting ordinance that prohibited the concealment of merchandise and defined the crime of shoplifting in a manner not requiring an intent to permanently deprive was not unconstitutional. *Id.* at 502–03. Interpreting the ordinance as requiring only an intent to conceal satisfied the constitutional requirement that a person not "be convicted . . . where he had no criminal intent." *Id.* at 502. Thus, states and municipalities may constitutionally pass laws that define the offense of shoplifting without requiring an intent to permanently deprive.

Morris was convicted of violating Anch. Mun.Code § 8.05.505(A) which prohibits the removal of merchandise:

*Removal of merchandise.* It is unlawful for any person to take or remove any merchandise or thing of value from the premises where such merchandise or thing of value is kept for purposes of sale, barter, or storage without the consent of the owner or person lawfully entitled to its possession.

Morris argued that conviction under the ordinance required a specific intent to permanently deprive. This court rejected that argument, and held that only an "intent to remove" was required. This court noted that "[t]he Anchorage shoplifting ordinance, of which removal of merchandise is a part, is not a common law offense requiring a specific intent to deprive." 652 P.2d at 504 (citations omitted). Rejecting another line of argument, this court held that the ordinance's requirement that an actor have a specific intent to remove was adequate to ensure that a person convicted under the ordinance was aware of the wrongfulness of his conduct. *Id.* at 504–05; *see Speidel v. State,* 460 P.2d 77 (Alaska 1969). Moreover, we concluded that there were:

no substantive due process problems with the ordinance because almost all people are aware that removal of merchandise is a type of activity that will arouse suspicion and possibly result in allegations of criminal conduct . . . In addition, removal of an unpurchased item from the store is reasonably related to the legitimate purpose of preventing theft. To render the ordinance constitutional, it is necessary only to infer a requirement of an intent to remove.

*Id.* at 505 (citation omitted). Thus, it is clear that a shoplifting ordinance that forbids the removal of merchandise from a store need not require an intent to permanently deprive in order to be constitutional.

Although the ordinance in *Morris* is similar to the ordinance in this case, the two provisions are sufficiently different so that *Morris* does not control this case. Comparison of the two ordinances is useful. AMC 8.05.550(A) provides:

*Removal of merchandise.* It is unlawful for any person to take or remove any

merchandise or thing of value from the premises where such merchandise or thing of value is kept for purposes of sale, barter, or storage without the consent of the owner or person lawfully entitled to its possession.

FGCO 6.303(a) states:

A person commits the offense of shoplifting if he takes possession of any goods offered for sale by a wholesale or retail business establishment with the intent to deprive the seller of such goods without paying their purchase price.

The Anchorage ordinance does not use any language reminiscent of common law larceny requirements. The Fairbanks ordinance, on the other hand, explicitly requires an "intent to deprive." The plain language of the Fairbanks ordinance does not permit the conclusion that its drafters wanted to dispense with the common law larceny requirement of an intent to permanently deprive, as was the case in *Nell v. State.* Rather, the question is whether, by using the term "intent to deprive" the lawmakers who passed the Fairbanks ordinance meant to establish an "intent to permanently deprive" as an element of the offense.

The city and Hugo contest the significance of the inclusion of the words "intent to deprive." The city argues that "intent to deprive" does not mean "intent to permanently deprive." Since the ordinance does not use the word "permanently," the city contends the ordinance requires not an intent to permanently deprive but only an "intent to deprive."

We must decide whether "deprive" as used in FGCO 6.303(a) has a common law meaning. At common law, larceny required an intent to permanently deprive an owner of his property. *See* W. LaFave & A. Scott, *Criminal Law* § 88, at 637 (1972). The term "deprive," used in a larceny statute, is generally defined to mean "permanently deprive." LaFave and Scott note that:

Model Penal Code § 223.0(1) defines the word 'deprive' (theft requires a 'purpose to deprive') as '(a) to withhold property of another permanently or for so extended a period as to appropriate a major portion

of its economic value, or with intent to restore only upon payment of reward or other compensation: or (b) to dispose of the property so as to make it unlikely that the owner will recover it.'

Ill.Rev.Stat. ch. 38, §§ 15–3, 16–1 treats the matter in a similar way. Wis.Stat. Ann. § 943.20 is less specific, requiring merely an 'intent to deprive the owner permanently of possession of such property.'

*Id.* at 637 n. 2. The general provisions section of the Alaska criminal code also defines "deprive" in terms of deprivation of a permanent nature. AS 11.46.990(B)(2) states:

(2) "deprive" or "deprive another of property" means to

(A) withhold property of another or cause property of another to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him;

(B) dispose of the property in such a manner or under such circumstances as to make it unlikely that the owner will recover the property;

(C) retain the property of another with intent to restore it to him only if he pays a reward or other compensation for its return;

(D) sell, give, pledge or otherwise transfer any interest in the property of another; or

(E) subject the property of another to the claim of a person other than the owner.

Both the statutes referred to by LaFave and Scott and the Alaska statutory definition of "deprive" demonstrate that the term "deprive," when used in a statute or ordinance to define larceny or a larceny-type offense, means to permanently deprive. If "deprive" is to mean something aside from permanent deprivation, it will be modified with an appropriate adverb.

To interpret FGCO 6.303(a) as requiring an intent other than an intent to permanently deprive requires the conclusion that the drafters of the Fairbanks shoplifting

ordinance used a common law term with the purpose of having it mean something aside from what it has traditionally meant. It could be that the use of "deprive" was inadvertent, and that in fact the drafters of the shoplifting ordinance did mean something less than an intent to permanently deprive. However, in the absence of any legislative history or other evidence that the drafters did intend to ascribe a lesser standard than an intent to permanently deprive in their use of the term "deprive," the only permissible conclusion is that they meant "deprive" to have its common law meaning.

■■■ Other rules apply to this case and militate in favor of Hugo's argument. "[A]mbiguities in penal statutes must be narrowly read and construed strictly against the government...." *Cassell v. State,* 645 P.2d 219, 222 (Alaska App.1982); *see* 3 C. Sands, *supra,* § 59.03, at 6–7. Statutes or ordinances that establish rights or exact penalties that are in derogation of the common law are construed in a manner that effects the least change possible in the common law. If a statute is intended to change the common law, then "the legislative purpose to do so must be clearly and plainly expressed." *Id.* § 61.01, at 41 (footnote omitted). Moreover:

> Words and phrases having well-defined meanings in the common law are interpreted to have the same meanings when used in statutes dealing with the same or similar subject matter as that with which they were associated at common law. Furthermore, common-law meanings are assumed to apply even in statutes dealing with new and different subject matter than that which comprised the legal context at common law, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning. Although a statute may define the way in which a particular word is used, the common-law background and origin of the word may, in cases of reasonable doubt, be useful to a proper understanding of the statute.

2A C. Sands, *supra,* § 50.03, at 277–78 (footnotes omitted). Shoplifting is essentially larceny. We must therefore interpret the term "deprive," when used in a larceny-type statute, in accordance with its common law meaning. We hold that to violate FGCO 6.303(a) a defendant must have intended to permanently deprive a business establishment of its merchandise.

■ In this case the trial court specifically stated in its findings of fact and law that on the basis of the evidence presented at trial, it could not determine whether Hugo had an intent to permanently deprive Pay 'N' Save of property. The trial judge found that she did not know whether Hugo intended to return to the store to pay for the property. Given this finding, it is clear that under the proper interpretation of the municipal ordinance, the trial court erred in finding Hugo guilty.

The judgment of conviction is REVERSED. The trial court is ordered to enter a judgment of acquittal.