On behalf of the prosecution it was proved that Benjamin Curry, a free man of color, was living in the house mentioned in the indictment, and cultivating the land on which it was situated, and on the day of the alleged trespass was ploughing in oats near the house; that he bought the land about twelve years before, about which time he also bought the negro woman Phillis, who was his wife and the mother of the other slaves; that he lived on the land ever since he bought it, during all which time, with the exception of a few weeks, he had possession of the *Page 136 
negroes and other personal property, up to the time of the trespass; that on the day of the alleged trespass the defendant Bennett, in company (172) with the other defendants, came to the house in the possession of Curry, and in despite of his repeated remonstrances, violently took and carried away the negroes and other personal property, and forcibly ejected Curry from the house, and put Hix, one of the defendants, in possession of it, who resided there until a few weeks before the trial, when he left the premises unoccupied.
The defense was put upon the ground that Curry was not in possession, and the defendants' counsel stated that they expected to prove that Bennett was in possession, for that Curry had sold the land, negroes, and other property to him, and executed deeds therefor, and that afterwards was surrendered to Bennett, and that he, to continue his own possession, placed these negroes there to live, and gave permission to Curry to stay there as a guest or lodger, or as his agent or overseer, he, Curry, taking care of the property in consideration of this permission to live with his wife and children. The defendants' counsel then read in evidence three deeds from Curry to Bennett, for the land, negroes, and other property in question. This evidence was objected to by the Solicitor General of the State. The defendants' counsel then introduced two witnesses, Hunt and Newsom, who gave evidence tending to establish the facts alleged in the defense.
The Solicitor General then stated that he had much evidence to offer, but being aware that it would be objected to, he would ask permission to state it to the court, that he might obtain the opinion of the court whether the whole or any part of it was admissible. He was requested to state it, which he did as follows: That the defendants' witness Hunt, and one Lindsay, had some time before the executions of the deeds by Curry to Bennett, by means of usury and extortion, obtained from Curry evidence of debt to a considerable amount, secured by a deed of trust, fraudulently obtained, upon Curry's land and negroes; that Lindsay and Hunt caused the trustee to advertise the negroes for sale, and that Curry, under great apprehension that his wife and children would be sold and carried out of the State, applied to the defendant Bennett for assistance; that Bennett promised him that if he would put the negroes in pawn to him, Bennett, he would stand his security and enable him to (173) enjoin the sale and bring Hunt and Lindsay to a fair settlement; that while Curry was resting easy under this assurance, Bennett, would came to a secret understanding with Lindsay; that he, Bennett, would buy the negroes from Curry with Lindsay's claims, and Lindsay agreed to wait with him until he could send the negroes off and sell them; that a few days before the sale under the trust was to take place Lindsay refused to stand to his agreement with Bennett, upon which Bennett *Page 137 
informed Curry that he could not assist him as he had promised; whereupon Curry took the negroes and carried them to Greensborough, and applied to counsel to have a bill of injunction prepared against Lindsay and Hunt; that Lindsay and Hunt, hearing of this, went to Bennett and agreed to take one hundred dollars less for their claims than had been before agreed upon if he would hasten off and prevent Curry from filing his bill, and induce him to return with the negroes; that Bennett accordingly posted off to Greensborough, and by artful representations and fair promises of assistance, prevailed upon Curry to return with the negroes; that on the day of the sale, and just before the sale was to take place, Bennett procured Curry to execute the deeds above-mentioned, with an understanding that Bennett would bring Hunt and Lindsay to a fair settlement, and also that if Curry should pay to Bennett in twelve months the balance he, Bennett, should have to pay on the claims of Hunt and Lindsay, then the negroes and all the other property should be re-conveyed to Curry, and in the meantime he, Curry, should retain the possession; that Curry believed that all this was expressed in the deeds; that on the same day Lindsay handed over to Bennett all the evidences of debt and surrendered to him the deeds of trust, Bennett giving him his bond for the amount last agreed on. That some short time afterwards Bennett told Lindsay that Curry was determined to file a bill and expose all his usury and frauds, and moreover that Curry alleged that one of the notes was a forgery; that Lindsay thereupon agreed to compromise upon almost any terms, and finally surrendered to Bennett the bond which he, Bennett, had given him, endorsed "received and satisfied in full," and took from him a bond for less than one-fourth of the amount of the former to be paid when Bennett should sell the negroes. That all this was transacted before Bennett committed (174) the alleged forcible trespass.
The defendants' counsel objected to all this evidence. The court was of opinion that only such parts of it as tended to explain the possession and to show whether the possession was in Curry or Bennett, were admissible, as the title of the land was not at issue; and the court excluded all the evidence relative to what had been done and transacted before Bennett undertook to assist Curry, and also excluded all the evidence as to what took place between Bennett and Lindsay after the execution of the deeds by Curry, and the surrender of the trusts and evidences of debt by Lindsay and Bennett. The Solicitor then called the witnesses, who stated the transactions, substantially as set forth by the Solicitor between the time when Bennett undertook to assist Curry, and the execution of the deeds, and the surrender of the trust and evidences of debt. *Page 138 
The defendants' counsel, in the argument, insisted that forcible trespass could not be committed unless the person in possession had some estate in the property, and moved the court to charge that unless the jury were satisfied that Curry had an estate in the property they should find for the defendants.
His Honor charged that to sustain the indictment the State must prove that Curry was in possession of the house, negroes, and other property; that being so in possession and being actually present, he was forcibly and with a strong hand deprived of the possession by the defendants; that in this indictment it was a matter of indifference who had the title, for the law forbids even the owner of property forcibly to take that property from the possession of another who was present, because of its tendency to a breach of the peace; and that the reason why the defendants had been permitted to read in evidence the deeds under which Bennett claimed was not to enable the jury to decide who had the title to the property, but to explain the possession and enable the jury to decide whether in point of fact at the time of the alleged trespass Bennett or Curry was in possession. That if this evidence satisfied them that Curry was suffered to hold possession of the house, negroes, and other (175) property under an agreement that he should have twelve months to redeem, and in the meantime might keep the possession, then the indictment was sustained so far as possession was concerned. Or if the evidence did not satisfy them that there was this right to redeem, but they were satisfied that after the execution of the deeds Curry was suffered to retain the house, land, and other property, and the negroes, though taken away for a time, had been sent back, with the understanding that he was to keep possession of the house and land, negroes and other property as long as he behaved himself, in the language of one of the witnesses, or until Bennett called on him to give up the possession, and in the meantime was to work on the land and hold possession of the negroes, stock., etc., then the indictment would still be sustained, so far as the possession was concerned; for though Bennett would then have the right to the possession whenever he chose to call for it, yet this case did not permit him to take possession by violence. But if the evidence satisfied them that after the execution of the deeds the possession of the house, negroes, and other property was surrendered to Bennett, and that he, with a view to continue his own possession, had put the negroes there to live, and gave permission to Curry to stay there as a guest or a lodger, or as his agent or overseer, he, Curry, having a care to the property in consideration of this permission to live with his wife and children, then the possession would be in Bennett, and they should find the defendants not guilty. His Honor further charged the jury that if they were satisfied that Curry had possession, the next question was, did the defendants *Page 139 
by violence deprive him of that possession, he being present at the time? That this violence would be sufficiently proved by the defendants' appearing in such numbers and under such circumstances as to deter Curry from resistance, though there was no actual breach of the peace; that to prove the presence of Curry it was not necessary to show that he had hold of the negroes, provided he was on the spot; that this offense could not be committed in Curry's absence because there would then be no danger of a breach of the peace; it was necessary that he should be present so as to make it likely that there would be a breach of the peace.
The jury returned a verdict of guilty against all the defendants; (176) whereupon it was ordered and adjudged by the court that the defendant Bennett should pay a fine of $100, and each of the other defendants a fine of $10. It was further ordered and adjudged that the defendant Bennett should be imprisoned for six calendar months, the imprisonment to be remitted upon said Bennett's surrendering to Benj. Curry the negroes and other personal property mentioned in the indictment, together with the debts and evidences of debt upon said Curry transferred to Bennett by Hamilton Lindsay, and executing to said Curry a reconveyance of the house and land, of the negroes, and other personal property contained in the deeds and bill of sale from Curry to Bennett, executing a release and discharge from all cause of action growing out of said deeds and bill of sale, the sufficiency of the deed of reconveyance and release to be approved by George C. Mendenhall and John A. Gilmer, attorneys of the court. It was further ordered that a writ of restitution should issue to the sheriff of the county, requiring him to place said Curry in possession of the house and land mentioned in the bill of indictment. From this judgment the defendant Bennett appealed to the Supreme Court.
The first exception taken by the defendant in this case is because of the admission on the trial of irrelevant and improper testimony. This exception was argued by his counsel upon the assumption that the judge had received all the testimony which the Solicitor General prayed leave to introduce. We were satisfied upon the statement of the case in the transcript that such could not have been the fact, but as the statement seemed to involve some inconsistency, probably the result of clerical inaccuracy, we have caused the transcript to be compared with the original record, and upon that examination find that his Honor declared that the rule of law excluded (not included as was set forth *Page 140 
(177) in the transcript) all the evidence of what occurred before Bennett undertook to assist Curry, and also excluded all the evidence offered of what took place between Bennett and Lindsay after the execution of the conveyances by Curry, and after the surrender of the deeds of trust and evidences of debt by Bennett and Lindsay. We have caused the transcript to be amended accordingly. It now distinctly appears, what before the court understood to appear, that the evidence admitted, which is the subject of this exception, was confined to the circumstances attendant on and explanatory of the alleged sale by Curry to Bennett, under which the latter pretended that he had possession, and Curry only the care of the property conveyed by it. To this evidence we can see no valid objection. We perfectly agree with the judge that the guilt or innocence of the persons charged in respect to the offenses described in the indictment did not depend upon the question whether Curry had the right to the property, or the right to its possession; but whether he had in fact the possession thereof at the time when that possession was charged to have been invaded with such lawless violence. If the house broken into were occupied by him as his dwelling house, and the goods forcibly wrested were held by him as his goods, and the evidence brought home to the accused the violence charged, it cannot be doubted but that the peace of the State was outrageously violated, and that the accused were guilty of the riot and trespass charged upon them. We are of opinion, therefore, that there was no error in the conviction of which the defendant complains. We think, however, that there are objections to the judgment rendered upon the conviction. This was not a conviction of the offense of a forcible entry and detainer, much less of that offense under the statutes. The indictment does not charge an expulsion from the house, and a withholding of the possession thereof up to the time of the finding of that indictment, nor set forth the interest of the prosecutor in the house from which he was expelled. The conviction, therefore, did not warrant a writ of restitution. Rex v. Bake, 3 Bur., 1732; Rex v. Wilson, 8 Term, 358; Hawkin's Pleas of the Crown, Book 1, ch. 28, sec. 41. So on a conviction for a nuisance, unless (178) the indictment set forth the nuisance as still in existence, there cannot be judgment to abate it. The King v. Stead, 8 Term, 142.
We are also of opinion that it was irregular to annex to the sentence any condition for its subsequent remission. We know that a practice has prevailed to some extent of inflicting fines with a provision that they should be diminished or remitted altogether upon matter thereafter to be done, or shown to the court by the person convicted. But we can find no authority in law for this practice, and feel ourselves bound upon this first occasion when it is brought judicially to our notice, to declare it illegal. A judgment, though pronounced by the judge, is not his *Page 141 
sentence, but the sentence of the law. It is the certain and final conclusion of the law following upon ascertained premises. It must therefore be unconditional. When it has been rendered — except that during the term in which it is rendered it is open for reconsideration — the court have discharged their functions, and have no authority to remit or mitigate the sentence of the law. Hawkin's, Book 2d, ch. 48, sec. 25; 1 Institutes, 260; King v. Wingfield, Cro. Car., 251. This is one of the high powers of the executive.
In cases where the law gives to the judges a discretion over the quantum of punishment they may, with propriety, suspend the sentence for the avowed purpose of affording to the convicted an opportunity to make restitution to the person peculiarly aggrieved by his offense, or to redress its mischievous public consequences. And when judgment is to be pronounced, the use which has been made of such opportunity is very proper to be considered by the court in the exercise of that discretion. Practically, therefore, every salutary effect of these provisional judgments is attainable without a departure from the forms of law. But if it were not, no considerations of expediency, or of supposed public convenience, can justify a departure from these, which are among the strong safeguards of public right and private security.
The judgment which has been rendered against the defendant is, therefore, reversed, and this opinion is to be certified to the Superior Court of law for the county of Guilford, with directions to award sentence of fine or of fine and imprisonment against the defendant agreeably thereto and to the laws of the State. (179)
PER CURIAM. Judgment reversed.
Cited: State v. Perkins, 82 N.C. 684; Strickland v. Cox, 102 N.C. 412;State v. Webster, 121 N.C. 587.