255 S.E.2d 142 (1979)
297 N.C. 305
In the Matter of Judge George R. GREENE, District Court Judge, Tenth Judicial District.
No. 152PC.
Supreme Court of North Carolina.
June 1, 1979.
*143 Asst. Dist. Atty. Karl Edward Knudsen, Raleigh, for petitioner.
Kirk, Tantum & Hamrick by John E. Tantum, Wendell, for respondent.

WRIT OF PROHIBITION
BROCK, Justice.
This cause is before the Supreme Court of North Carolina upon petition and allegations of District Attorney, Tenth Prosecutorial District, said petition being labeled Petition for Writ of Mandamus. Judge Greene has responded to the said petition stating that he is agreeable to the facts as outlined in the petition. The facts as set out below are, therefore, not controverted.
On 11 November 1978 Richard Allen Godwin was convicted in District Court, Wake County, in case No. 78CR63698 upon his plea of guilty to operating a motor vehicle while under the influence of intoxicating liquor.
On 30 April 1979 Richard Allen Godwin was convicted in District Court, Wake County, in case No. 79CR18655 upon his plea of guilty to operating a motor vehicle while under the influence of intoxicating liquor, second offense; and of driving while his operator's license was revoked.
On 30 April 1979 Judge George R. Greene was the presiding judge in District Court, Wake County, before whom Richard Allen Godwin entered his plea of guilty. Judge Greene entered a verdict of guilty as charged and sentenced Richard Allen Godwin to imprisonment for four months and suspended the entire sentence for four months upon the payment of $300.00 fine and the costs of court. The defendant was not assigned to any alcohol rehabilitation program for treatment in lieu of imprisonment.
North Carolina General Statute 20-179 as amended by Session Laws 1977, Second Session, ch. 1222 became effective 1 March 1979 and was in effect as the sentencing provision for the second offense to which Richard Allen Godwin pleaded guilty on 30 April 1979. The statute as amended reads in pertinent part as follows:
"(a) Every person who is convicted of violating G.S. 20-138, G.S. 20-139(a), or G.S. 20-139(b) shall be punished as follows:
(1) . . .;
(2) for a conviction of a second offense, imprisonment for not less than three days nor more than one year and a fine not less than two hundred dollars ($200.00) nor more than five hundred dollars ($500.00);
(3) . . . .

The first three days of imprisonment pursuant to subsections (2) and (3) above shall not be subject to suspension or parole; provided that in lieu of such imprisonment pursuant to subsection (2) above the court may allow the defendant to participate in a program for alcohol or drug rehabilitation approved for this purpose by the Department of Human Resources; and upon defendant's successful completion of such program the court may suspend all or any part of the term of imprisonment. Convictions for offenses occurring prior to July 1, 1978, or more than three years prior to the current offense shall not be considered prior offenses for the purpose of subsections (2) and (3) above. (Emphasis added.)"
The Assistant District Attorney brought to the attention of Judge Greene the requirements of G.S. 20-179 that the defendant be sentenced to at least three days of active imprisonment or be assigned to an approved alcohol rehabilitation program. Judge Greene stated that it was his opinion that he had the inherent power to suspend all of the sentence he imposed.
By his response to the petition filed in this Court Judge Greene asserts that he "had the inherent power to suspend the sentence given Richard Allen Godwin and any attempt by the Legislature to infringe on such inherent power is unconstitutional and therefore void."
*144 At the outset we observe that the first offense of driving under the influence charged against Richard Allen Godwin occurred on 21 October 1978, which was subsequent to 1 July 1978 and within three years of the second offense of driving under the influence charged against him, the second offense having occurred on 26 March 1979. The provisions of the statute in question became effective 1 March 1979. Therefore the first and second offenses charged against Richard Allen Godwin fall clearly within the purview of the amended statute.
We are not here concerned with the plenary inherent powers of the courts to provide for, supervise, and direct the conduct of the business of the courts and the proceedings before them. Nor are we here concerned with the plenary inherent power of the courts temporarily to delay, for judicial purposes, pronouncement of judgment or execution of sentence under a pronounced judgment, so as to afford time to consider post-trial motions, to prevent a miscarriage of justice, and for other like purposes contemplated by law and justice. For these reasons the pronouncement of judgment may be deferred, but only for a reasonable time. We address only the claimed "inherent" power of the court to continue prayer for judgment on conditions or suspend execution of sentence on conditions.
When prayer for judgment is continued without conditions, the pronouncement of judgment is suspended. When judgment is pronounced and sentence is suspended on conditions, execution of sentence is stayed. When either judgment or sentence is suspended on conditions, the ultimate purpose is the same. State v. Miller, 225 N.C. 213, 34 S.E.2d 143 (1945).
We begin with certain basic premises provided by the Constitution of North Carolina. Article I, Section 6, provides: "The legislative, executive and supreme judicial powers of the State government shall be forever separate and distinct from each other." Article II, Section 1, provides: "The legislative power of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives." Article III, Section 5(6), provides: "The Governor may grant reprieves, commutations, and pardons, after conviction, for all offenses (except in cases of impeachment), upon such conditions as he may think proper, . . . ." Article IV, Section 1, provides: "The judicial power of the State shall . . . be vested in a Court for the Trial of Impeachments and in a General Court of Justice. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a coordinate department of the government, nor shall it establish or authorize any courts other than as permitted by this Article."
Legislative powers and clemency powers are not constitutionally vested in the Judicial Branch of government. Those powers are constitutionally vested in the General Assembly and the Executive. Unfortunately, there are statements in numerous of our cases to the effect that the courts have the "inherent" power to suspend execution of sentence. E. g., State v. Simmington, 235 N.C. 612, 70 S.E.2d 842 (1952). This use of the term "inherent" is highly misleading and obscures the true source of the power to suspend the execution of sentence. The power to suspend execution of sentence derives from the legislative power to prescribe punishment. In prescribing punishment the Legislature may be very specific or it may grant the trial judge discretion to determine punishment within limits prescribed by the Legislature. The seminal statement of this principle was made by Justice Gaston in State v. Bennett, 20 N.C. 170, 178 (1838):
"We are also of opinion that it was irregular to annex to the sentence any condition for its subsequent remission. We know that a practice has prevailed to some extent of inflicting fines with a provision that they should be diminished or remitted altogether upon matter thereafter to be done, or shown to the court by the person convicted. But we can find no authority in law for this practice, and feel *145 ourselves bound upon this first occasion when it is brought judicially to our notice, to declare it illegal. A judgment, though pronounced by the judge, is not his sentence, but the sentence of the law. It is the certain and final conclusion of the law following upon ascertained premises. It must therefore be unconditional. When it has been renderedexcept that during the term in which it is rendered it is open for reconsiderationthe courts have discharged their functions, and have no authority to remit or mitigate the sentence of the law. Hawkin's, Book 2d, ch. 48, sec. 25; 1 Institutes, 260; King v. Wingfield, Cro.Car., 251. This is one of the high powers of the executive.
In cases where the law gives to the judges a discretion over the quantum of punishment they may, with propriety, suspend the sentence for the avowed purpose of affording to the convicted an opportunity to make restitution to the person peculiarly aggrieved by his offense, or to redress its mischievous public consequences. And when judgment is to be pronounced, the use which has been made of such opportunity is very proper to be considered by the court in the exercise of that discretion. Practically, therefore, every salutary effect of these provisional judgments is attainable without a departure from the forms of law. But if it were not, no considerations of expediency, or of supposed public convenience, can justify a departure from these, which are among the strong safeguards of public right and private security."
The trial courts of North Carolina continued the practice of continuing prayer for judgment on conditions and of suspending execution of sentence on conditions, and ultimately this Court specifically approved the practice in State v. Crook, 115 N.C. 760, 20 S.E. 513 (1894). Nonetheless, State v. Bennett, supra, specifically identifies the source of the trial judge's power to suspend execution of sentence. The power to define a crime and prescribe its punishment originates with the Legislative Branch. The power to continue prayer for judgment on conditions or to suspend execution of sentence on conditions does not arise from an "inherent" power of the Judiciary for that is a mode of punishment for crime rightly for determination by the General Assembly. Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). The General Assembly, at times specifically, and at times by implication, accords to the Judiciary the discretion to prescribe the amount and the mode of punishment for a crime.
From 1894 to 1937 the General Assembly tacitly approved, by inaction, the practice of the Court in continuing prayer for judgment on conditions or suspending execution of sentence on conditions. See Coates, Punishment For Crime in North Carolina, 17 N.C.L.Rev. 205 (1939). In 1937 the General Assembly specifically authorized the Judiciary to suspend the imposition or the execution of sentence in all cases except for crimes punishable by death or life imprisonment. G.S. 15-197. This 1937 enactment was repealed by Session Laws 1977, ch. 711, § 33, effective 1 July 1978. Enacted in its place were Articles 81 and 82 of Chapter 15A of the General Statutes, specifically G.S. 15A-1331 and G.S. 15A-1341, which provide for supervised and unsupervised probation. The official Commentary to G.S. 15A-1341 states: "Subsection (b) specifies both supervised and unsupervised probation. These two categories replace the present probation and release on suspended sentence; in this Article unsupervised probation is the equivalent of the present release on suspended sentence without probation."
This general grant of authority by the General Assembly to the Judiciary to continue prayer for judgment and to suspend execution of sentence is addressed to convictions of crimes in general, except crimes the punishment for which is death or life imprisonment. G.S. 15A-1331(a). However, the provision of our present G.S. 20-179 providing that the first three days of imprisonment provided for in the statute "shall not be subject to suspension or parole", except by defendant's participation in a prescribed program for alcohol or drug *146 rehabilitation, is addressed to a specific crime. When two statutes deal with the same subject matter the statute which is addressed to a specific aspect of the subject matter takes precedence over the statute which is general in application unless the General Assembly intended to make the general statute controlling. It seems clear the General Assembly intended the specific statute to control. Food Stores v. Board of Alcoholic Control, 268 N.C. 624, 151 S.E.2d 582 (1966). Absent specific prohibition by the Legislature, courts have the power to suspend sentence in their discretion. However, where the Legislature mandates an active sentence, courts must apply the law as enacted by the Legislature. The North Carolina Court of Appeals recently addressed a similar question in State v. Vert, 39 N.C.App. 26, 249 S.E.2d 476 (1978). In Vert the defendant contended that the mandated prison term of seven years under G.S. 14-87(c) violated the separation of powers clause of the Constitution because the courts had the inherent power to suspend the execution of sentence. The Court of Appeals said:
"In State v. Lewis, [226 N.C. 249, 37 S.E.2d 691 (1946)], the court stated that the power of the trial courts to suspend judgment was both inherent and statutory. The power to suspend sentences referred to in Lewis does not mean exclusive power that cannot be abridged by the Legislature. Rather, it is the authority possessed by and exercised by the courts in administering the punishment for crime prescribed by the Legislature. See Mallard, Inherent Power of the Courts of North Carolina, 10 Wake Forest L.Rev. 1 (1974)." Id. at 31, 249 S.E.2d at 479.
Stated somewhat differently, the power to defer or suspend the imposition of sentence is not a judicial power beyond statutory limitation. This view is well expressed in Commonwealth v. Jackson, (Mass.) 344 N.E.2d 166 (1976), in which defendant was convicted of carrying a pistol without a license and received a mandatory, minimum, active sentence of one year as provided by a Massachusetts statute. On appeal defendant challenged the constitutionality of the statute on grounds, inter alia, that a mandatory one-year jail sentence violates the separation of powers doctrine embodied in Article 30 of the Declaration of Rights of the Massachusetts Constitution. Held:
"[W]e cannot say that these practices have attained a constitutional status. The ability to defer the imposition of sentence, although a valuable feature in our legal system, is not necessary to the very existence of a court, and, as such, is not an inherent power beyond statutory limitation.
The logic of this position is demonstrated by considering that in our tripartite system of government it is unquestionable that the Legislature has the authority to determine what conduct shall be punishable and to prescribe penalties. Sheehan, petitioner, 254 Mass. 342, 345, 150 N.E. 231 (1926). Although it is the court's function to impose sentences upon conviction, it is for the Legislature to establish criminal sanctions and, as one of its options, it may prescribe a mandatory minimum term of imprisonment. Bel v. Chernoff, 390 F.Supp. 1256, 1259 (D.Mass. 1975). If we were to conclude that the judiciary could exercise its discretion to suspend imposition or execution of sentence despite statutory proscription, a serious question concerning the separation of powers would arise, for, taking this proposition to its logical extreme, it would mean that the judiciary impliedly possesses the power to nullify the Legislature's authority. As recognized by the Supreme Court in Ex parte United States, petitioner, supra, 242 U.S. at 42, 37 S.Ct. at 74, `if it be that the plain legislative command fixing a specific punishment for crime is subject to be permanently set aside by an implied judicial power upon considerations extraneous to the legality of the conviction, it would seem necessarily to follow that there could be likewise implied a discretionary authority to permanently refuse to try a criminal charge because of the conclusion that a particular act made *147 criminal by law ought not to be treated as criminal. And thus it would come to pass that the possession by the judicial department of power to permanently refuse to enforce a law would result in the destruction of the conceded powers of the other departments, and hence leave no law to be enforced.'" Id. at 177-78.
We hold that the Courts at North Carolina do not have an "inherent" power to continue prayer for judgment on conditions or to suspend sentence where the sentence is made mandatory by the General Assembly.
It follows that Judge Greene's duty in the case of Richard Allen Godwin was to pronounce judgment and sentence as mandated by the General Assembly in G.S. 20-179. This he failed and refused to do.
It is argued to us by Judge Greene that Rule 22 of the North Carolina Rules of Appellate Procedure requires the district attorney to file his petition in the Superior Court. In view of the nature of the petition, we suspend the operation of Rule 22 in order "to expedite decision in the public interest . . .." App.R. 2. Also we elect to exercise the Constitutional authority of the Supreme Court to issue "any remedial writs necessary to give it general supervision and control over the proceedings of the other courts." North Carolina Constitution, Article IV, Section 12(1).
Although the district attorney's petition is labeled "Petition for Writ of Mandamus" we elect to treat it as a Petition for Writ of Prohibition.
IT IS THEREFORE ORDERED that Judge Greene, District Court Judge, Tenth Judicial District, be, and he is hereby, directed:
That upon conviction of a defendant in his court, or upon a defendant's plea of guilty, or plea of nolo contendere in his court to a charge of a second or third offense of operating a motor vehicle in violation of G.S. 20-138, G.S. 20-139(a), or G.S. 20-139(b), to pronounce judgment in accordance with G.S. 20-179; that is to say, he shall neither continue prayer for judgment on conditions or suspend the first three days of the sentence of a pronounced judgment, for a second or third offense of a violation of G.S. 20-138, G.S. 20-139(a), or G.S. 20-139(b); provided, however, that in lieu of such imprisonment for a second offense of violating G.S. 20-138, G.S. 20-139(a), or G.S. 20-139(b), he may allow the defendant to participate in a program for alcohol or drug rehabilitation approved for this purpose by the Department of Human Resources; and upon defendant's successful completion of such program he may suspend all or any part of the term of imprisonment.
The application of this Writ is prospective only and does not disturb the disposition of the case against Richard Allen Godwin.
It is further ordered that the Clerk of this Court is designated as Marshal of this Court to forthwith personally serve upon Judge Greene a certified copy of this Writ and make his return hereon.