**IN RE TUCKER**

[348 N.C. 677 (1998)]

IN RE: INQUIRY CONCERNING A JUDGE, NO. 207 ELTON G. TUCKER, Respondent

No. 617A97

(Filed 9 July 1998)

**1. Judges, Justices, and Magistrates § 36 (NCI4th)— district court judge—DWI cases—ex parte representations of counsel—entry of not guilty verdicts—shorthand disposal acquiesced in by State—not judicial misconduct—censure not warranted**

A district court judge's entry of not guilty pleas and not guilty verdicts in two DWI cases based solely on the *ex parte* representations of the defense attorney, without determining whether the State had consented to the dispositions or wished to be heard, did not amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute and did not warrant censure where the judge acted pursuant to a process of disposing of cases in a shorthand manner that had been initiated or acquiesced in by the State, defense counsel misled the judge as to the status of these two cases, and the judge did not intentionally or knowingly dispose of the cases without the knowledge of the prosecuting attorney.

**2. Judges, Justices, and Magistrates § 36 (NCI4th)— district court judge—PJC in DWI cases—mistaken belief as to law—censure not warranted**

A district court judge's conduct in entering prayers for judgment continued and then dismissals rather than sentences as required by N.C.G.S. § 20-179 upon finding the defendants guilty of DWI did not amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute and did not merit censure where the judge did not know that a prayer for judgment continued was not available for DWI cases, and his conduct was the result of a mistaken, but honest, belief that the mandatory sentencing provisions of N.C.G.S. § 20-179 would not come into effect if he continued prayer for judgment until a date certain and then dismissed the case.

This matter is before the Court upon a recommendation by the Judicial Standards Commission, entered 16 December 1997, that respondent, Judge Elton G. Tucker, a Judge of the General Court of Justice, District Court Division, Fifth Judicial District of the State of

North Carolina, be censured for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct. Heard in the Supreme Court 28 May 1998.

*William N. Farrell, Jr., Special Counsel, for the Judicial Standards Commission.*

*Tharrington Smith, L.L.P., by Roger W. Smith, E. Hardy Lewis, and F. Hill Allen, for respondent.*

ORDER REJECTING CENSURE.

The Judicial Standards Commission (Commission) bases its recommendation for censure upon two sets of actions by Judge Tucker (respondent) involving four individual cases. The Commission notified respondent on 15 July 1996 that it had ordered a preliminary investigation to make inquiry concerning alleged misconduct. Special counsel for the Commission filed a complaint against respondent on 19 May 1997, alleging that respondent: (1) disposed of two cases involving defendants charged with driving while impaired (DWI), *State v. Mullaney*, New Hanover County docket number 96CR05088, and *State v. Nored*, New Hanover County docket number 96CR10555, *ex parte* when neither case was calendared for his courtroom and no evidence was presented; and (2) continued prayer for judgment for two years and then dismissed the cases of *State v. Webb*, Pender County docket number 93CR01250, and *State v. Doffermyre*, New Hanover County docket number 93CR19541, also involving defendants charged with DWI. Respondent answered, generally admitting the factual allegations but denying that they described the use of his judicial power for purposes which he knew or should have known were beyond the legitimate exercise of his authority.

After a hearing conducted 13 November 1997, the Commission found that respondent entered not guilty pleas and not guilty verdicts in the *Mullaney* and *Nored* cases based solely on the *ex parte* representations of defense attorney John Collins, without determining whether the State had consented to the dispositions or wished to be heard. The Commission further found that respondent failed to carry out his duty to pronounce judgment and sentence as mandated by N.C.G.S. § 20-179 in the *Webb* and *Doffermyre* cases. Based on its findings, the Commission concluded that respondent's conduct constituted conduct in violation of Canons 2A, 3A(1), and 3A(4) of the North Carolina Code of Judicial Conduct, conduct prejudicial to the

administration of justice that brings the judicial office into disrepute, and willful misconduct in office in light of a private reprimand issued in 1986. The Commission recommended that this Court censure respondent.

We appreciate the Commission's thorough analysis and recommendations. The Commission serves "as an arm of the Court to conduct hearings for the purpose of aiding the Supreme Court in determining whether a judge is unfit or unsuitable." *In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978). However, when the Commission's recommendations are reviewed, they "are not binding upon the Supreme Court, which will consider the evidence of both sides and exercise its independent judgment as to whether it should censure, remove or decline to do either." *In re Nowell*, 293 N.C. 235, 244, 237 S.E.2d 246, 252 (1977). Historically, the Court has resisted adopting "strict guidelines" for determining whether a judge should be censured or removed and has instead chosen to decide each case "upon its own facts." *In re Peoples*, 296 N.C. 109, 157, 250 S.E.2d 890, 918 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). After carefully reviewing the record, the evidence presented at the hearing before the Commission, the recommendation of the Commission, and the briefs of both parties, and after hearing oral argument, this Court concludes that respondent's conduct does not require censure.

[1] Respondent's conduct as to the first set of cases can be summarized as follows. On 26 June 1996, respondent was presiding over New Hanover County Criminal District Court in courtroom 317. Defense attorney Collins approached respondent at the bench with the *Mullaney* and *Nored* case files. Collins presented respondent with the files and said, "These are for not guilty, not guilty." According to former assistant district attorney Sandra Gray Criner, "not guilty, not guilty" was a practice which had developed in dealing with DWI cases for which the Breathalyzer test results were sufficient but for which some other essential element was lacking. The policy of the elected district attorney was "not to dismiss driving while impaired charges" for a defendant who blew .08 on the Breathalyzer or refused to take the Breathalyzer test. Rather than violate this policy by dismissing a DWI case, the assistant district attorney would call the case but not present any evidence. Of necessity, if the State presented no evidence, the judge would enter a not guilty verdict.

Over a period of time, this practice was reduced to the shorthand of "not guilty, not guilty." After determining that the State had insuf-

ficient evidence to prosecute a DWI case, Criner testified that she and the defense attorney would take the case file to respondent and state, "This is a not guilty, not guilty," meaning that the defendant was pleading not guilty, the State was presenting no evidence, and the judge should enter a verdict of not guilty. In some instances, after discussing the case, either Criner or the defense attorney alone would take the case to respondent for this "not guilty, not guilty" treatment. Respondent testified that while this was not a common practice, it was not unusual either. Evidence in the record suggests that other assistant district attorneys and other defense attorneys may also have engaged in this "not guilty, not guilty" procedure; the evidence is inconclusive as to whether it was practiced by any other district court judges. It is apparent from the record that John Carriker, District Attorney for the Fifth Prosecutorial District, was unaware of this practice.

In the *Nored* and *Mullaney* cases, when defense attorney Collins presented respondent with the case files and stated, "These are for not guilty, not guilty," respondent understood that to mean that the assistant district attorney had been consulted on these cases and that the State would present no evidence. Respondent acted as he had on previous occasions under similar circumstances and entered not guilty pleas and not guilty verdicts. Collins testified that he "believed [he] had the consent of Ms. Criner" in the *Nored* and *Mullaney* cases based on a brief conversation they had had two weeks earlier. However, Criner had not authorized Collins to proceed in such a manner with these two cases. Collins had removed the *Nored* case file from courtroom 302 and had taken the *Mullaney* file from its place in courtroom 317 without the permission of either of those courtrooms' prosecuting attorneys. For unknown motives, Collins, whom respondent had ample reason to trust by reputation, by personal knowledge, and by his position as an officer of the court, misled respondent as to the status of these two cases, resulting in *State v. Mullaney* and *State v. Nored* being disposed of without the State's consent and without the State being heard.

In 1978, Chief Justice Sharp wrote that no judge can "justify disposing of a criminal case in court without the knowledge of the prosecuting attorney, for when he does so he purposely violates the duties of his office." *In re Peoples*, 296 N.C. at 155, 250 S.E.2d at 916. This pronouncement is as valid today as when it was made, and our decision in this case is in no measure intended to weaken or undermine it. However, we conclude that in the particular instances in question

## IN RE TUCKER

[348 N.C. 677 (1998)]

respondent did not intentionally or knowingly dispose of the cases "without the knowledge of the prosecuting attorney." The State, through the actions of at least one assistant district attorney, had acquiesced in, if not initiated, the process of disposing of cases in this shorthand manner. We cannot say, under these peculiar circumstances, that respondent must be censured for failing to make further inquiry as to the State's position. ·

Nonetheless, we strongly condemn the "not guilty, not guilty" practice engaged in by respondent, assistant district attorney Criner, and Mr. Collins. Each judge and attorney in the courts of our State has a duty to uphold the legal process. Neither complacency nor the search for efficiency should obscure that responsibility. We reaffirm the standard announced in *In re Nowell*:

> [T]he disposition of any case for reasons other than an honest appraisal of the facts and law as disclosed by the evidence and the advocacy of both parties[] will amount to conduct prejudicial to the administration of justice. In due course, such conduct cannot fail to bring the judicial office into disrepute.

*In re Nowell*, 293 N.C. at 251, 237 S.E.2d at 256. While we do not approve of or condone respondent's actions, we decline to hold that respondent's participation in this process, under the circumstances, amounted to conduct prejudicial to the administration of justice which brings the judicial office into disrepute. However, we send a clear warning to judges, district attorneys, assistant district attorneys, and defense attorneys that such procedures and practices are wholly unacceptable.

[2] As to the second set of cases at issue, respondent's actions can be described as follows. On 3 June 1993, in the case of *State v. Webb*, respondent determined, following a trial on a plea of not guilty, that the defendant was guilty of driving while impaired. Defense counsel argued that the defendant had no prior alcohol-related offenses, that he drove for a living and would lose his commercial driver's license if convicted of DWI, and that he had small children. Respondent did not enter a verdict of guilty, but continued prayer for judgment for two years with the case to be dismissed at that time if the defendant had no alcohol-related moving violations in that time period. On 3 February 1994, the defendant in the *Webb* case came before respondent again, having been charged with DWI but pleading guilty to a reduced charge of reckless operation, a nonalcohol-related offense. When the DWI case from June 1993 came on for disposition before

IN RE TUCKER

[348 N.C. 677 (1998)]

respondent on 22 June 1995, respondent dismissed it because there had been no intervening convictions for alcohol-related moving violations. In a similar occurrence, on 19 April 1994, respondent continued prayer for judgment for two years in the case of *State v. Doffermyre* after finding the defendant guilty on a plea of guilty to DWI. When the *Doffermyre* case came on for judgment on 19 April 1996, respondent dismissed the case.

Evidence adduced at the hearing before the Commission showed that respondent firmly believed he had the authority to prevent a "conviction" by continuing prayer for judgment to a date certain and then dismissing the case. Respondent considered the PJC (prayer for judgment continued) to be a "commonly used tool" in disposing of misdemeanor cases and did not know that it was not available for DWI cases. He mistakenly believed that the mandatory sentencing provisions of N.C.G.S. § 20-179 would not come into effect if he continued prayer for judgment until a date certain and then dismissed the case. Respondent testified that "it was my opinion that until a sentence was entered—until a judgment was pronounced that there was no conviction." He continued to adhere to this interpretation of the law even after the complaint in this inquiry was filed.

This Court held in *In re Greene*, 297 N.C. 305, 255 S.E.2d 142 (1979), that "the Courts of North Carolina do not have an 'inherent' power to continue prayer for judgment on conditions or to suspend sentence where the sentence is made mandatory by the General Assembly." *Id.* at 312, 255 S.E.2d at 147. *Greene* involved the sentencing provisions of N.C.G.S. § 20-179, under which the General Assembly mandated an entry of judgment and sentence upon conviction on or a plea of guilty to a charge of DWI. When the case of *Greene* was brought to the attention of respondent in August 1997 by former Superior Court Judge Gary Trawick, respondent conceded that he did not have authority to continue prayer for judgment in a DWI case by virtue of the mandatory sentencing required by N.C.G.S. § 20-179. Respondent testified before the Commission that he recognized that he had been mistaken about his authority and that he would no longer continue prayer for judgment in order to dismiss a DWI case.

A judge is expected to "be faithful to the law and maintain professional competence in it." Code of Judicial Conduct Canon 3A(1), 1998 Ann. R. N.C. 247-48. However, we have stated that judges may not be disciplined for errors of judgment or errors of law. *In re*

**IN RE TUCKER**

[348 N.C. 677 (1998)]

*Martin*, 333 N.C. 242, 245, 424 S.E.2d 118, 120 (1993). Respondent's error in the *Webb* and *Doffermyre* cases occurred when he entered prayers for judgment continued and then dismissals, rather than sentences as required by N.C.G.S. § 20-179, upon finding the defendants guilty of DWI. This conduct was the result of a mistaken, but honest, interpretation of the law and respondent's authority under the statute. It did not involve "more than an error of judgment or a mere lack of diligence," *In re Nowell*, 293 N.C. at 248, 237 S.E.2d at 255, and, as such, does not merit censure.

In summary, we conclude that the actions of respondent at issue here were not so egregious as to amount to conduct prejudicial to the administration of justice that brings the judicial office into disrepute within the meaning of N.C.G.S. § 7A-376.

Now, therefore, it is, pursuant to N.C.G.S. §§ 7A-376 and -377 and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission, ordered that the recommendation of the Commission that Judge Elton G. Tucker be censured be, and is hereby, rejected.

Done by order of the Court in Conference, this the 8th day of July, 1998.

ORR, J.
For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 9th day of July 1998.

CHRISTIE SPEIR CAMERON
Clerk of the Supreme Court

CAROL B. TEMPLETON
Assistant Clerk