STATE OF NORTH CAROLINA
v.
DANIEL CHARLES LEWIS, DEFENDANT

No. COA13-254

Filed 17 December 2013

1. **Appeal and Error—preservation of issues—failure to object—failure to argue plain error**

     Defendant failed to preserve the issue that the trial court erred in an attempted first-degree murder and possession of a firearm by a felon case by admitting a detective's testimony regarding his belief that a baggy carried by defendant contained crack cocaine. Defendant did not object at trial and did not argue plain error. Further, it was improbable that the jury would have reached a different verdict if the testimony regarding the drugs had been excluded.

2. **Sentencing—credit—none for time spent in federal prison**

     The trial court did not err in an attempted first-degree murder and possession of a firearm by a felon case by failing to grant defendant credit for his time spent in federal custody prior to trial on the charges in this case. Under N.C.G.S. § 15-196.1, defendant's time in federal custody did not qualify under its terms for sentencing credit. Further, defendant's remaining arguments were also unpersuasive.

Appeal by defendant from judgments entered 29 August 2012 by Judge James Floyd Ammons, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 28 August 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Stuart M. Saunders, for the State.*

*Law Offices of John R. Mills NPC, by John R. Mills, for defendant-appellant.*

STATE v. LEWIS

[231 N.C. App. 438 (2013)]

GEER, Judge.

Defendant Daniel Charles Lewis appeals from his convictions of attempted first degree murder and possession of a firearm by a felon. On appeal, defendant primarily argues that the trial court erred in not granting him credit for his time spent in federal custody prior to trial on the charges in this case. The statute authorizing credit is, however, clear and unambiguous, and defendant's time in federal custody did not qualify under its terms for sentencing credit. The trial court, therefore, properly denied defendant the requested credit. Because we find defendant's remaining arguments also unpersuasive, we hold that defendant received a trial free of prejudicial error.

## Facts

The State's evidence tended to show the following facts. On 2 July 2009, Jeff Canady, a detective in the narcotics division of the Johnston County Sheriff's Office, was investigating a tip that cocaine was being distributed from a house on Barber Mill Road. From his unmarked patrol car, he observed a gold Nissan automobile pull up to the residence and leave after fewer than five minutes. Because the detective knew that it is typical for vehicles to pull up and stay for a very short time when narcotics transactions are taking place, he followed the Nissan. After calling in the vehicle tag, Detective Canady learned that the tag had been reported stolen. Based on these circumstances and his observation that one of the vehicle's brake lights was out, Detective Canady initiated a traffic stop.

Defendant was seated in the rear of the Nissan. Before the Nissan came to a complete stop, defendant opened the right rear passenger door and began running. Detective Canady called for backup and began pursuing defendant, at first in his car and then on foot after defendant turned into a wooded area. When the detective caught up to defendant, he put his arms around him, pushed him into a fence, and then pushed him onto the ground. Defendant was on his hands and knees with Detective Canady on top, straddling him, as the detective tried, unsuccessfully, to handcuff defendant. After pulling the handcuffs off his left wrist, defendant snatched the handcuffs from Detective Canady and threw them out of reach.

Defendant continued to resist and ultimately stood up with Detective Canady on his back. Once they were standing, defendant reached down to the ground with his right hand and then raised his right arm up and around towards his left shoulder. Defendant had a black,

semiautomatic handgun in his right hand and a clear plastic bag containing what Detective Canady believed to be crack cocaine in his left hand. Defendant pointed the gun at Detective Canady's head and pulled the trigger multiple times. The gun did not fire because Detective Canady grabbed the top of the gun with his left hand and prevented the hammer from cocking all the way back. Defendant eventually dropped the gun and ran away. He was detained shortly thereafter by two other officers.

When Detective Canady recovered defendant's handgun, the safety was in the forward position, meaning the gun was ready to fire. The magazine from the gun contained live rounds, and the chamber held a live round.

Defendant was charged with attempted first degree murder, assault with a deadly weapon on a law enforcement officer, and possession of a firearm by a felon. Initially, the State dismissed the charges to allow federal charges based on the same conduct to proceed in federal court. In federal court, defendant pled guilty to being a felon in possession of a firearm, but his conviction was vacated on appeal because none of his felonies made him eligible for such a conviction under federal law. *United States v. Lewis*, 453 F. App'x 344, 2011 WL 5532247, 2011 U.S. App. LEXIS 22852 (4th Cir. Nov. 15, 2011) (unpublished) (per curiam). After defendant's federal conviction was vacated, the State reinstated the state charges against defendant.

At trial, defendant testified in his own defense that on the day of the crime, defendant and the four other men in the Nissan were searching for an individual known as "Maniac" who had robbed one of them. When the men found Maniac, defendant got out of the car and tried to fire his gun to let Maniac know he was there. He pulled the trigger four times, but it did not shoot. When Maniac and the others saw defendant they took off running, so defendant got back in the car and they left.

Defendant testified that the gun was not his, and although he was told that the gun worked, no one in the car could get it to shoot. At one point, the gun fell apart and even after he put it back together, it would not shoot.

Defendant further testified that after Detective Canady activated his lights, defendant ran because he "knew there was more stuff in this car than what I had on me and I figured that he would search the car and I was just running to get away." Defendant admitted resisting Detective Canady's attempt to arrest him and to pulling out his handgun, but defendant claimed that he pulled out the gun to try to toss it away "[t]o get him to go towards the gun to give me a chance to keep running."

STATE v. LEWIS

[231 N.C. App. 438 (2013)]

According to defendant, he was ultimately unable to toss the gun away because Detective Canady grabbed it, causing a "tug-of-war over the gun" for approximately 30 to 45 seconds. Defendant claimed that during the tug-of-war, he told Detective Canady that the gun didn't work, which he tried to demonstrate by pulling the trigger. He also said to Detective Canady, "Man, just give me one more chance to run." Defendant then let go of the gun and kept running. Defendant testified that he never had the gun pointed at Detective Canady's head.

The jury found defendant guilty of attempted first degree murder and assault with a firearm on a law enforcement officer. Defendant pled guilty to possession of a firearm by a felon. The trial court arrested judgment on the assault charge. On the other charges, the court sentenced defendant to concurrent presumptive-range terms of 220 to 273 months imprisonment for the attempted murder charge and 16 to 20 months imprisonment for the possession of a firearm charge. Defendant received 566 days of credit for time served in state custody. At the sentencing hearing, defendant also requested credit for the 18 months he spent in federal custody. The trial judge denied his request, stating: "He's to be given credit for any time he's entitled. . . . I don't believe I have any authority to give him any credit for the time spent in federal custody, which is about 18 months." Defendant timely appealed to this Court.

I

[1] Defendant first argues that Detective Canady's testimony regarding his belief that a baggy carried by defendant contained crack cocaine was inadmissible as irrelevant under Rule 401 and unfairly prejudicial under Rule 403 of the Rules of Evidence. We must first address whether this issue was properly preserved for appeal.

At trial, Detective Canady's testimony began with a narrative description of the events on the day of the crime. Defendant did not object when the detective testified that "[a]t that point[,] I saw the defendant's left hand – there was a clear plastic bag with what I believe to contain an off-white rock substance that I believed to be crack cocaine." It was not until the topic came up again during Detective Canady's direct testimony, 31 pages later in the transcript, that defendant objected:

> Q. You stated that in addition to the defendant having a gun in his hand, in his right hand on July 2, 2009, that you observed something in his left hand; is that correct?
>
> A. That's correct.
>
> Q. Describe for the jury what you saw[.]

A. I observed a clear plastic bag –

[DEFENSE COUNSEL]: Your Honor, Objection. He's not charged with that and the whole purpose of that is to inflame the jury at this point.

THE COURT: Overruled.

A. I observed a clear plastic bag with an off-white hard rock substance that I believed to be crack cocaine.

"Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984). Because defendant did not object to the evidence the first time it was introduced, he did not preserve the issue for appeal.

Nor was the issue preserved for plain error. Pursuant to Rule 10(a) (4) of the Rules of Appellate Procedure, a defendant asserting plain error must contend "specifically and distinctly" in his brief that any error committed by the trial court amounted to plain error. *See, e.g., State v. Nobles*, 350 N.C. 483, 501-02, 515 S.E.2d 885, 896-97 (1999) (declining to address admissibility of evidence to which defendant did not object at trial and did not allege plain error on appeal). Because defendant did not allege plain error in his brief, defendant has waived appellate review of this issue.

Even if defendant had asserted plain error, he has not shown sufficient prejudice. "To show that an error was fundamental, a defendant must establish prejudice – that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal quotation marks omitted). Here, it is undisputed that several times during defendant's struggle with Detective Canady, defendant pulled the trigger of a fully loaded gun with a live bullet in the chamber, and that defendant knew that the gun was loaded because he had loaded it himself. According to Detective Canady, defendant had aimed the gun at the detective's head when defendant pulled the trigger, and the only reason why the gun did not fire was because Detective Canady was able to grab the top of the gun and put his thumb on the hammer to keep it from cocking all the way back. Defendant did not run away from Detective Canady again until after he lost control of and dropped the gun.

Although defendant testified that the gun did not work, an SBI forensic specialist testified that she performed a firearm function exam

on defendant's gun and that without manipulating the gun in any way, she was able to fire the gun three times and did not note any malfunctions or unusual reactions. Defendant also admitted that the person who gave him the gun, when they were looking for Maniac, had told him that the gun worked. Given our review of the entire record, we believe that it is improbable that the jury would have reached a different verdict if the testimony regarding the drugs had been excluded.

II

[2] Next, defendant argues that his judgment should be vacated and remanded for a proper sentencing determination that gives him credit for his 18 months in federal custody. Generally, sentencing errors are reviewed for " 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.' " *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A-1444(a1) (Cum. Supp. 1996)). However, because defendant's argument is based upon statutory construction of the sentencing statute, it is reviewed de novo. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) ("Issues of statutory construction are questions of law, reviewed de novo on appeal.").

Defendant argues that he is entitled to credit for his time in federal custody under N.C. Gen. Stat. § 15-196.1 (2011), which states:

> The minimum and maximum term of a sentence shall be credited with and diminished by the total amount of time a defendant has spent, committed to or in confinement in *any State or local correctional, mental or other institution* as a result of the charge that culminated in the sentence. The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent in custody pending trial, trial de novo, appeal, retrial, or pending parole, probation, or post-release supervision revocation hearing: Provided, however, the credit available herein shall not include any time that is credited on the term of a previously imposed sentence to which a defendant is subject.

(Emphasis added.)

The language of the statute is plain and unambiguous. Under the statute, a defendant will receive credit for confinement in "any State or local correctional, mental or other institution as a result of the charge that culminated in the sentence." *Id.* "When the language of a statute is

clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978).

Defendant's time spent in federal custody does not satisfy the requirements for credit under this provision because (1) his confinement was in a federal institution and not a "State or local" institution; and (2) his confinement was not a "result of the charge that culminated in the sentence," but rather a result of the federal charge. N.C. Gen. Stat. § 15-196.1. Therefore, N.C. Gen. Stat. § 15-196.1 does not require that defendant be given credit.

Conceding that the statute does not explicitly give credit for confinement in a federal institution, defendant argues that the statute should be interpreted to allow credit in this case to avoid constitutional prohibitions on cruel and unusual punishment and double jeopardy. He cites *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 299-300, 150 L. Ed. 2d 347, 361, 121 S. Ct. 2271, 2279 (2001) (internal citation and quotation marks omitted), for the principle that "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems." However, this rule of statutory construction only comes into play when a statute is ambiguous and subject to more than one interpretation. When, as with N.C. Gen. Stat. § 15-196.1, the statute is clear and unambiguous, the Court is powerless to adopt an alternate interpretation. *In re Banks*, 295 N.C. at 239, 244 S.E.2d at 388-89.

To the extent defendant is also arguing that the failure to give him credit renders his sentence unconstitutional, that issue was not raised below and, therefore, was not preserved for appeal. *See State v. Freeman*, 185 N.C. App. 408, 414, 648 S.E.2d 876, 881 (2007) (dismissing defendant's assignment of error that sentence was grossly disproportionate to severity of crime in violation of Eighth Amendment because defendant did not object at trial, and therefore failed to preserve argument), *overruled on other grounds as recognized in State v. Ward*, 199 N.C. App. 1, 681 S.E.2d 354 (2009).

Defendant next urges this Court to adopt the approach of the federal district court in *Childers v. Laws*, 558 F. Supp. 1284 (W.D.N.C. 1983), and give credit in situations where the incarceration is related to the conviction in North Carolina and is not credited toward any valid

conviction in a foreign jurisdiction. In *Childers*, an inmate was arrested and jailed in Virginia after escaping from the North Carolina Department of Corrections. *Id.* at 1285. The inmate's confinement in Virginia was "solely at the request and direction of the State of North Carolina" and based on the fact that the inmate "had not yet completed a lawfully imposed sentence of imprisonment" in North Carolina. *Id.* at 1287.

The federal district court concluded that double jeopardy was implicated, and the court interpreted N.C. Gen. Stat. § 15-196.1 as giving the inmate credit for his time spent in custody in Virginia because the original sentence was a "final judgment not open to further expansion" and not granting credit "in effect amounts to an *increase* in [the inmate's] prison sentence." *Childers*, 558 F. Supp. at 1287. Further, the court found that not granting credit deprived the inmate of due process because "[t]he sentencing judge or judges at [the inmate's] original convictions have thus been totally bypassed and [the inmate] has received a greater sentence not contemplated by those earlier sentencing judges." *Id.*

*Childers* is not, however, binding on this Court. Regardless, unlike the inmate in *Childers*, defendant's time in federal custody was based upon a separate federal charge. Double jeopardy is not implicated when different sovereigns punish for the same conduct. *See In re Cobb*, 102 N.C. App. 466, 467-68, 402 S.E.2d 475, 476 (1991) ("The U.S. Supreme Court has held that 'two identical offenses are not the same offence within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns.' . . . '[T]he States are separate sovereigns with respect to the Federal Government.' " (quoting *Heath v. Alabama*, 474 U.S. 82, 89, 92, 88 L. Ed. 2d 387, 394, 396, 106 S. Ct. 433, 438, 439 (1985))). Nor is due process implicated because the sentencing judge was not "bypassed" -- on the contrary, the trial judge was presented with the request for credit and denied it.

Finally, defendant argues, in the alternative, that even if the statutory scheme does not *mandate* the provision of credit for his time spent in federal custody, it does not limit the court's discretion to provide such credit because (1) "[n]othing in the statute limits the trial judge's traditional discretion to impose sentences befitting the crime"; (2) such a limit would unconstitutionally infringe on judicial power under Article IV, Section 1 of the North Carolina Constitution; and (3) as in *State v. Weaver*, 264 N.C. 681, 686-87, 142 S.E.2d 633, 637 (1965), "the courts of this state have long found it appropriate to provide credit for time served on convictions arising out of the same conduct that produced a later invalidated initial conviction."

The General Assembly, however, has limited the trial court's discretion in sentencing by the Structured Sentencing Act, which lays out the procedure for sentencing:

> Before imposing a sentence, the court shall determine the prior record level for the offender pursuant to G.S. 15A-1340.14. The sentence shall contain a sentence disposition specified for the class of offense and prior record level, and its minimum term of imprisonment shall be within the range specified for the class of offense and prior record level, *unless applicable statutes require or authorize another minimum sentence of imprisonment.*

N.C. Gen. Stat. § 15A-1340.13(b) (2011) (emphasis added). "As used in statutes, the word 'shall' is generally imperative or mandatory." *State v. Johnson,* 298 N.C. 355, 361, 259 S.E.2d 752, 757 (1979) (quoting *Black's Law Dictionary* 1541 (4th rev. ed. 1968)).

Therefore, because a sentence "shall" be determined according to the statute, a trial judge's discretion in sentencing is " 'bound by the range of sentencing options prescribed by the legislature.' " *State v. Streeter,* 146 N.C. App. 594, 599, 553 S.E.2d 240, 243 (2001) (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 481, 147 L. Ed. 2d 435, 450, 120 S. Ct. 2348, 2358 (2000)). *See also State v. Allen,* 359 N.C. 425, 431, 615 S.E.2d 256, 261 (2005) ("Pursuant to the Structured Sentencing Act, sentencing judges *must* impose both a minimum and maximum active, intermediate, or community punishment for felony convictions. Separate statutory punishment charts *dictate* a defendant's minimum and maximum sentence." (emphasis added) (internal citation omitted)), *opinion withdrawn on other grounds,* 360 N.C. 569, 635 S.E.2d 899 (2006). Only when "applicable statutes require or authorize another minimum sentence of imprisonment" does a judge have discretion to deviate from the prescribed range. N.C. Gen. Stat. § 15A-1340.13(b).

We find that N.C. Gen. Stat. § 15-196.1 is an "applicable statute" that "require[s] or authorize[s] another minimum sentence of imprisonment" under the Structured Sentencing Act. N.C. Gen. Stat. § 15A-1340.13(b). The General Assembly provided, in N.C. Gen. Stat. § 15-196.3 (2011), that "[t]ime creditable under [N.C. Gen. Stat. § 15-196.1] *shall reduce the minimum and maximum term of a sentence . . . .*" (Emphasis added.) Because the statute specifically identifies credit for pre-trial custody as a mandatory reduction in the sentence, we hold that the General Assembly intended N.C. Gen. Stat. § 15-196.1 to be an "applicable statute" under N.C. Gen. Stat. § 15A-1340.13(b) that provides an exception

to the minimum terms of imprisonment required under the sentencing guidelines. Because no statute specifically authorizes credit for time spent in federal custody, the trial court had no discretion under the Structured Sentencing Act to reduce defendant's sentence for his time in federal custody.

As for defendant's constitutional argument that a limit on a judge's discretion to grant credit unconstitutionally infringes on judicial power under the North Carolina Constitution, that issue was not raised below and is not properly before this Court. Regardless, limiting a judge's discretion to grant credit does not infringe upon judicial power because "[t]he power to define a crime and prescribe its punishment originates with the Legislative Branch." *In re Greene*, 297 N.C. 305, 309, 255 S.E.2d 142, 145 (1979) (holding that "[t]he power to continue prayer for judgment on conditions or to suspend execution of sentence on conditions does not arise from an 'inherent' power of the Judiciary for that is a mode of punishment for crime rightly for determination by the General Assembly"). "In prescribing punishment the Legislature may be very specific or it may grant the trial judge discretion to determine punishment *within limits prescribed by the Legislature.*" *Id.* at 308, 255 S.E.2d at 144 (emphasis added).

Finally, defendant's reliance on *Weaver* is misplaced. In *Weaver*, the defendant was initially convicted of felonious assault and sentenced, but the conviction was vacated and set aside in a habeas corpus proceeding. 264 N.C. at 683, 142 S.E.2d at 634. The defendant was subsequently retried on an identical bill of indictment and convicted of a lesser included offense of assault with a deadly weapon. *Id.*, 142 S.E.2d at 635. At the second trial, the defendant was sentenced to two years, which was the maximum permissible sentence, and was not given credit for the time served on the first sentence. *Id.* at 684, 686, 142 S.E.2d at 635, 637. The Supreme Court held that he was entitled to credit for the time served under the first sentence, reasoning that, otherwise, the total time served would exceed the maximum punishment for the offense charged. *Id.* at 687, 142 S.E.2d at 637. Notably, the Court did not grant credit for the time the defendant was in custody after his original sentence was vacated but while awaiting the new trial because the "defendant was not serving a sentence as punishment for the conduct charged in the bill of indictment," but rather for his failure to pay bond fixed by the trial court's order. *Id.*, 142 S.E.2d at 637-38.

Here, unlike *Weaver*, the original sentence was under a different *federal* charge, and, therefore, not pursuant to an identical bill of indictment. Furthermore, *Weaver* did not give the trial judge discretion to

grant credit where not authorized by statute. On the contrary, it followed the limitations of the statute by denying credit for the defendant's confinement in a state prison when it was not punishment for the charged offense but rather due to his default on bond.

No error.

Judges ROBERT C. HUNTER and McCULLOUGH concur.